No. 15-55287

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

**FLO & EDDIE, INC.,**

*Plaintiff-Appellee*,

v.

**PANDORA MEDIA, INC.,**

*Defendant-Appellant.*

_____

On Appeal from the United States District Court for the Central District of California
Case No. CV14-7648 PSG

_____

## EXCERPTS OF RECORD
## VOLUME I OF II

_____

| | |
|---|---|
| James K. Lynch | Gregory G. Garre |
| Andrew M. Gass | *Counsel of Record* |
| LATHAM & WATKINS LLP | Jonathan Y. Ellis |
| 505 Montgomery Street, Suite 2000 | LATHAM & WATKINS LLP |
| San Francisco, California 94111 | 555 Eleventh Street, NW, Suite 1000 |
| Telephone: (415) 391-0600 | Washington, DC 20004 |
| Facsimile: (415) 395-8095 | Telephone: (202) 637-2007 |
| jim.lynch@lw.com | Facsimile: (202) 637-2201 |
| andrew.gass@lw.com | gregory.garre@lw.com |
| | jonathan.ellis@lw.com |

September 2, 2015

*Attorneys for Pandora Media, Inc.*

# INDEX OF EXCERPTS OF RECORD

## VOLUME I (ER1-14)

| Description | Page |
|---|---|
| Order Denying Pandora's Anti-SLAPP Motion to Strike, filed February 23, 2015 (ECF No. 28) | ER 1 |

## VOLUME II (ER15-180)

| Description | Page |
|---|---|
| Notice of appeal, filed February 24, 2015 (ECF No. 30) | ER15 |
| California Legislature Assembly Bill No. 3483, 1981-1982 Regular Session, Legislative History, Exhibit 1 to Motion to Strike Each Cause of Action in the Complaint Pursuant to California's Anti-SLAPP Statute, filed December 19, 2014 (ECF No. 22-3) | ER16 |
| California Legislature Assembly Bill No.566, General Session, Legislative History, Exhibit 10 to Motion to Strike Each Cause of Action in the Complaint Pursuant to California's Anti-SLAPP Statute, filed December 19, 2014 (ECF No. 22-12) | ER88 |
| Complaint, filed October 2, 2014 (ECF No. 1) | ER155 |
| Docket for the Central District of California docket no. 2:14-cv-07648-PSG-Rz | ER175 |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order DENYING Pandora's Anti-SLAPP Motion to Dismiss

Before the Court is Defendant Pandora Media, Inc.'s ("Pandora") anti-SLAPP motion to dismiss. *See* Dkt. # 22. After considering the arguments in the moving, opposing, and reply papers, as well as those presented at a hearing on February 23, 2015, the Court DENIES the motion.

## I. Background

Flo & Eddie Inc. ("Flo & Eddie") is a corporation that is owned and exclusively controlled by Howard Kaylan and Mark Volman, two of the founding members of the 1960s music group "The Turtles." *See Volman Decl.* ¶¶ 1-7. The Turtles recorded a number of hit songs between 1965 and 1969, including the iconic track "Happy Together." *Id.* ¶ 3. Today, Flo & Eddie own all the rights to The Turtles' master sound recordings. *Id.* ¶ 7.

Pandora is one of the leading operators of an internet radio service in the United States, offering a personalized music experience for each of its 200 million registered users "wherever and whenever they want to listen to radio" on a wide range of "internet-connected devices" including smart phones, tablets, traditional computers, car audio systems. *See Answer* ¶ 1; *Geller Decl.* ¶ 2, Ex. A. Pandora offers this service to paying and non-paying members of the public in California and delivers and streams music through its website and to smart phones and tablets through its downloadable Android and iOS Apps. *See Answer* ¶ 16.

Pandora offers and advertises stations dedicated to pre-1972 recordings, including "60s Oldies," "60s, 70s, and 80s Hits," and "Golden Oldies." *See Geller Decl.* ¶ 4, Ex. D. Pandora has never obtained a license from Flo & Eddie to exploit The Turtles' recordings and generally does not seek licenses or pay royalties for pre-1972 sound recordings used in connection with its music service. *Volman Decl.* ¶ 8; *Answer* ¶ 2; *Geller Decl.* ¶¶ 2-3, Ex. B-C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

    On October 2, 2014, Flo & Eddie filed this lawsuit against Pandora, asserting the following claims on behalf of itself and a class of owners of pre-1972 recordings: (1) violation of Cal. Civ. Code § 980(a)(2); (2) misappropriation; (3) violation of Cal. Bus. & Prof. Code § 17200; and (4) conversion. *See* Dkt. # 1. Pandora answered the complaint on December 5, 2014. Dkt. # 17. Pandora now moves to strike the four claims against it under California's anti-SLAPP statute.

II.    <u>Legal Standard</u>

    California Code of Civil Procedure § 425.16 provides for a special motion to strike a "strategic lawsuit against public participation" ("SLAPP"). Such a motion, commonly called an "anti-SLAPP motion," provides courts with a remedy to dismiss at an early stage nonmeritorious litigation that challenges various kinds of protected speech. *See Kashian v. Harriman*, 98 Cal. App. 4th 892, 905 (2002); Cal. Code. Civ. Proc. § 425.16(b)(1). The anti-SLAPP statute is given full effect in federal court. *See U.S. v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).

    In ruling on an anti-SLAPP motion to strike, the court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). "The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Id.* (citing Cal. Code Civ. Proc. § 425.16(b)(1)). An anti-SLAPP motion is "applicable to causes of action that result from a defendant's (1) oral or written statements 'made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law'; (2) any written or oral statement made in connection with an issue under consideration or review by a governmental body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a public place or in a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitution right of petition or of free speech in connection with a public issue or topic of public interest. *Martin v. Inland Empire Utilities Agency*, 198 Cal. App. 4th 611, 623 (2011) (quoting Cal. Code Civ. Proc. § 425.16(e)).

    "If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.'" *Id.* at 622 (quoting *Simpson Strong-Tie Co., Inc. v. Gore*, 29 Cal. 4th 12, 21 (2010)). "A plaintiff opposing an anti-SLAPP motion bears the burden to make a prima facie showing of facts that would support a judgment in plaintiff's favor." *See HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

App. 4th 204, 211 (2004). In making this determination, the court considers "the pleadings, as well as 'supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" *Id.* (quoting Cal. Code Civ. Proc. § 425.16(b)(2)). "In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." *Id.* at 212.

"The court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. The trial court merely determines whether a prima facie showing has been made that would warrant the claim going forward." *Id.* Accordingly, because this second step of the anti-SLAPP inquiry does not involve the weighing of evidence, the California Supreme Court has described it as an early stage "summary-judgment-like procedure." *See Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007).

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute – i.e., that arises from protected speech or petitioning *and* lacks even minimal merit – is a SLAPP, subject to being stricken under the statute." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).

III. Discussion

The Court will address each prong of the anti-SLAPP analysis in turn.

A. Pandora's Protected Activity

It is Pandora's burden to demonstrate that Flo & Eddie's claims against it arise out of Pandora's "protected activity." *Equilon*, 29 Cal. 4th at 67 (2002). Pandora argues that its allegedly unlawful conduct in this case – streaming Flo & Eddie's sound recordings over the internet to users – is protected activity under § 425.16(e)(4) because it is "conduct in furtherance of the exercise of the constitutional right…of free speech in connection with a public issue or an issue of public interest." *See Mot.* 16:23-28 (quoting Cal. Civ. Proc. Code § 425.16(e)(4)). The Ninth Circuit has explained that a showing under this first prong "contains two distinct components." *See Hilton v. Hallmark Cards*, 599 F.3d 894, 903-05 (9th Cir. 2009). Pandora must show that it was engaged in conduct: "(1) in furtherance of the right of free speech, and (2) in connection with an issue of public interest." *See Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013) (citing Cal. Civ. Proc. Code § 425.16(a), (e)(4)). Flo & Eddie only challenges this first component, arguing that copyright infringing activity is not conduct in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

furtherance of Pandora's First Amendment right to free speech. *See Opp.* 5:10-12; *id.* 5:16-8:13.[1]

The Ninth Circuit has observed that "the courts of California have interpreted this piece of the defendant's threshold showing rather loosely" and that "it seems to suffice…that the defendant's activity is communicative[.]" *See Hilton*, 599 F.3d at 904 (selling a birthday card featuring celebrity Paris Hilton's face and her "that's hot" catchphrase qualifies as activity in furtherance of free speech); *see also No Doubt v. Activision Publishing, Inc.*, 192 Cal. App. 4th 1018, 1027 (2011) (making a videogame qualifies as conduct in furtherance of free speech because "[v]ideogames generally are considered 'expressive works' subject to First Amendment protections").

Accordingly, to satisfy this prong, Pandora offers that "'[m]usic, as a form of expression and communication, is protected under the First Amendment.'" *See Mot.* 17:3-5 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989)). Moreover, that protection extends not just to original creators of musical works and recordings, but also to third parties who disseminate them. *See Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 567-69 (9th Cir. 1984) ("To have access to live musical expression, the public must necessarily rely on concert promoters to make arrangements for musicians to perform… Consequently, promoters of musical expression of all types enjoy the protections of the first amendment."). Thus, Pandora argues that its "streaming music to its users is, beyond dispute, an exercise of its First Amendment rights." *See Mot.* 17:1-12; *Reply* 5:4-5.

Flo & Eddie does not challenge the "noncontroversial propositions" that entertainment enjoys First Amendment protection or that a SLAPP suit can be based on the dissemination or exhibition of musical works, but contends that these propositions do not mean that "any exploitation of entertainment by a broadcaster qualifies as an exercise of free speech protected under § 425.16." *See Opp.* 6:22-7:4. The claims in this case arise from Pandora's streaming Flo & Eddie's sound recordings without authorization to do so. *See Mot.* 5:1-11. Flo & Eddie assert that this streaming activity is not in furtherance of Pandora's free speech rights because "the First Amendment does not protect copyright infringement." *See Opp.* 5:10-19. Flo & Eddie's argument is that where a defendant's allegedly wrongful conduct is infringing on a copyright, the conduct is not a "protected activity" pursuant to § 425.16. *See id.* 6:22-8:8.[2]

---

[1] Pandora explains that playing Flo & Eddie's sound recordings for the public is connected with an issue of public interest because the sound recordings are culturally valuable to society. *See Mot.* 17:13-18:4 (citing *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677 (2010); *Cusano v. Klein*, 473 Fed. Appx. 803, 804 (9th Cir. 2012)).

[2] To the extent that Flo & Eddie suggests that the anti-SLAPP statute only applies to lawsuits brought with the actual intention to chill free speech, *see Opp.* 7:18-8:2; *Reply* 4:17-28, that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

To the extent that Flo & Eddie argues that because Pandora is violating its sound recording ownership rights, Pandora's conduct is an "invalid" exercise of First Amendment rights and thus not "protected activity" under the anti-SLAPP statute, Flo & Eddie's argument is unsuccessful. *See Opp.* 5:17-6:21, 8:2-8; *Reply* 5:12-7:4. Analyzing the lawfulness of defendant's conduct when determining whether it is activity in furtherance of free speech inappropriately "conflate[s] the two distinct prongs of the anti-SLAPP statute." *Gangland*, 730 F.3d at 954 ("The district court inappropriately concluded that under the anti-SLAPP statute, a lawful broadcast is in furtherance of Defendants' free speech, but an unlawful broadcast is not."); *see also Navellier v. Sletten*, 29 Cal. 4th 82, 94-95 (2002) (if the statute required the defendant to "first establish her actions are constitutionally protected" then "the secondary inquiry as to whether the plaintiff has established a probability of success would be superfluous") (internal quotation omitted). When Flo & Eddie supports its argument with citation to the same authority it relies on to argue that California recognizes a public performance right in sound recording ownership, it appears that Flo & Eddie does make this conflated merits-based argument. *Opp.* 6:7-17. The Court rejects that theory.

Although Pandora does not respond to this argument in its reply brief, Flo & Eddie also suggest, alluding to somewhat different reasoning, that copyright claims, successful or not, do not target free speech activity. *See Opp.* 7:5-13. Flo & Eddie cites *Duncan v. Cohen*, No. C 08-2243 BZ, 2008 WL 2891065 (N.D. Cal. Jul. 22, 2008) for the proposition that if an action centers on copyright claims, it is not aimed at protected activity under the anti-SLAPP statute. In *Duncan*, an author sued filmmakers for attempting to turn his novel into a film. *Duncan*, 2008 WL 2891065 at *1. The court concluded that the filmmaking was not "protected activity" under the anti-SLAPP statute because the filmmakers did not base their rights to use the author's material on free speech, rather they based their rights on a purported contract that gave them rights to the novel. *Id.* at *2. Thus, the court held that the action "centers on copyright and contract claims, not protected activity, and the anti-SLAPP statute does not apply." *Id.*

Flo & Eddie do not brief this issue beyond a quick parenthetical to the case, but the reasoning in *Duncan* suggests that a defendant's justification for his allegedly wrongful conduct can determine whether or not that conduct is in furtherance of his free speech rights. While this theory does not appear to have been widely adopted, the courts have addressed it. *See No Doubt*, 192 Cal. App. 4th at 1028. In *No Doubt*, a band sued a videogame maker for using the band members' likenesses in the game "Band Hero" in a manner that allegedly exceeded the parties' contractual agreement and violated the band's right of publicity. *Id.* at 1022. The court held that the videogame maker's conduct arose from protected activity and distinguished the case from *Duncan* – whereas the filmmakers in *Duncan* based their rights on a contract, the videogame

---

contention has been soundly refuted. *See Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66-67 (2002) (refusing to apply an "intent-to-chill" requirement in anti-SLAPP analysis).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

maker "asserts that it has a First Amendment right to exploit the likeness of No Doubt in Band Hero, separate and apart from its argument that the license from No Doubt permitted [the contested] use." *Id.*

Although analysis of whether conduct is "in furtherance of free speech rights" used in *Hilton* and *Gangland* suggest that California courts conduct a more basic inquiry (whether the conduct is communicative or protected as expressive under the First Amendment), if it is necessary to examine Pandora's rationale for the lawfulness of its streaming conduct, Pandora's position passes the test. Pandora does not assert a right to stream Flo & Eddie's sound recordings based in a contract or licensing arrangement, rather, Pandora asserts that it, like anyone who buys a copy of a sound recording, has a free speech right to play those recordings in any manner it desires without obtaining authorization from Flo & Eddie to do so. *See Mot.* 4:12-1717:1-12; *Reply* 1:2-3; *see also* Dkt. # 17 ["Answer"] at 10 (listing violation of the First Amendment as an affirmative defense).

Because Pandora's streaming of Flo & Eddie's sound recordings to users is conduct in furtherance of Pandora's right to free speech in connection with an issue of public importance, Pandora's conduct is "protected activity" under the first prong of the anti-SLAPP statute.

B. <u>Flo & Eddie's Probability of Prevailing</u>

As discussed above, if the defendant first carries his burden to demonstrate that the alleged activity is protected, the "plaintiff…bears the burden to make a prima facie showing of facts that would support a judgment in plaintiff's favor." *See HMS Capital*, 118 Cal. App. 4th at 211 (2004). "In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." *Id.* at 212. "[T]he court's responsibility is to accept as true the evidence favorable to the plaintiff and…[to] determine[] whether a prima facie showing has been made that would warrant the claim going forward." *Id.* Somewhat contrary to the plain language of the statute, the plaintiff need not actually show a likelihood of success of the merits, only "minimal merit." *See Navellier*, 29 Cal. 4th at 94.

Pandora's motion attacks the legal sufficiency of Flo & Eddie's claims, not their factual sufficiency. *See Mot.* 4:5, n.3 ("This anti-SLAPP motion is in the nature of a 12(b)(6) motion, in that it takes all facts alleged in the Complaint as true, and mounts only legal (not factual) defenses."); *Reply* 1:11, n.2. Thus, Flo & Eddie's factual showings – the declaration of former Turtles' band member Mark Volman about the recording and ownership of the sound recordings, *see Volman Decl.*, and the publicly available documents about Pandora's business model and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

music offerings, *see Geller Decl.*, Ex.A-D – are adequate to support that Flo & Eddie's factual theory of the case has the requisite "minimal merit."

Pandora argues that, even if all of the facts alleged in the complaint are true, Flo & Eddie's claims fail because its ownership of sound recordings does not include the exclusive right to publicly perform those recordings. Therefore, Pandora is not infringing on Flo & Eddie's ownership rights when it performs the sound recordings in the course of its business. Pandora recognizes that this Court recently ruled, pursuant to Cal. Civ. Code § 980(a)(2), that ownership of a pre-1972 sound recording includes the exclusive right to publicly perform the recording. *See Flo & Eddie Inc. v. Sirius XM Radio Inc.*, No. CV 13-13-5693 PSG (RZx), 2014 WL 4725382 at *9 (C.D. Cal. Sept. 22, 2014) (the "*Sirius* Ruling"). However, based on a legal theory that was not presented to this Court in *Sirius*, Pandora argues that this Court misinterpreted § 980(a)(2) and that Flo & Eddie do not hold any rights at all in their pre-1972 recordings under that statute. If the Court agrees with Pandora's theory, it will grant the anti-SLAPP motion because Flo & Eddie have no probability of prevailing in a lawsuit premised on the violation of non-existent rights.

The Court will first provide the legal context for its analysis by reviewing the relationship between federal and state copyright law with respect to sound recording protection and providing a summary of the *Sirius* Ruling. The Court will then present and analyze Pandora's theory regarding the effect of publication on pre-1972 sound recording rights.

### i. *Federal and State Copyright Protection of Sound Recordings*

The federal Copyright Act exclusively governs rights attendant to works of authorship in many areas; however, it explicitly leaves certain segments of copyright law open to state regulation. *See generally,* 17 U.S.C. § 301 (the Copyright Act's preemption section). When Congress passed the 1976 Copyright Act, it carved out pre-1972 sound recordings as a limited area of copyright law unaffected by the new federal law and within the domain of the states: "With respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any state shall not be annulled or limited by this title until February 15, 2067…no sound recording fixed before February 15, 1972, shall be subject to copyright under this title[.] " *Id.* § 301(c). Accordingly, California statutory and common law presently governs the rights that attach to pre-1972 sound recordings because the Copyright Act does not apply to those earlier recordings and explicitly allows states to continue to regulate them. *Id.* Flo & Eddie's sound recordings were fixed prior to February 15, 1972 (*Volman Decl.* ¶ 3); therefore, its rights to those recordings depend solely on whatever rights California law affords to sound recording owners.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

  *ii. The Sirius Ruling*

  In a similar case before this Court, Flo & Eddie moved for summary judgment as to liability against Sirius XM Radio Inc. asserting the same four claims at issue in this case. *See Sirius*, 2014 WL 4725382 at \*2; Dkt. # 1. This Court granted summary judgment, finding liability on each cause of action, because Sirius broadcasted Flo & Eddie's sound recordings over the internet in violation of Flo & Eddie's exclusive right to publicly perform those recordings. *Sirius*, 2014 WL 4725382 at \*9, \*11.

  In that order, the Court interpreted the plain language of § 980(a)(2), a 1982 codification of pre-1972 sound recording ownership rights, as inclusive of the exclusive right to publicly perform a recording. *See id.* at \*4-5. It is necessary to restate the Court's reasoning in reaching that conclusion for the purposes of this motion because Pandora argues that consideration of law that pre-dates the 1982 version of § 980(a)(2) reveals that the legislature only intended to protect sound recording rights in a very limited way. The Court will determine whether Pandora's arguments undercut the logic supporting the Court's interpretation of the statute.

  Section 980(a)(2) provides:

> The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein until February 15, 2047, as against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording.

Cal. Civ. Code § 980(a)(2). The Court's analysis in *Sirius* turned on the plain meaning of "exclusive ownership" and the rule of construction that when exceptions are listed, they are exhaustive. *Id.* ("[B]y finding it necessary to specify an excepted right to ownership in a sound recording, the legislature conveyed that limitations on ownership did not live within the concept itself, rather they required elucidation."). Further, the Court determined that interpreting the statute as inclusive of a public performance right did not conflict with California common law in 1982 (when the legislature passed § 980(a)(2)) because no court applying California law had ever excluded public performance rights from sound recording ownership. *Id.* at \*6.

  Although the Court did not consider it necessary to its holding to look beyond the text of the statute, it nonetheless did so to bolster its reading of § 980(a)(2). *Id.* at \*6-7. The legislative history of § 980(a)(2) and comparison to the 1976 Copyright Act's treatment of sound recordings further suggested that the legislature intended to include all ownership rights that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

could attach to intellectual property, including the right of public performance, excepting only the limited right to make "covers" expressly stated in § 980(a)(2). In response to Congress' preemption of the majority of state copyright law in the 1976 Act, the legislature drafted § 980(a)(1-2) to exclude subject matter that Congress had chosen to regulate ("works of authorship fixed in a tangible medium of expression" and sound recordings fixed after February 15, 1972). *Id.* at *6 (*comparing* 17 U.S.C. § 301(a), (c) *with* Cal. Civ. Code § 980(a)(1-2)). As the California legislature evidently considered the 1976 Copyright Act when drafting § 980(a)(2) (because the Act was the impetus for § 980(a)(2)), the California law's departures from the federal law are particularly instructive of the legislature's intent. In contrast to the two statutes' alignment on the "covers" exception, the Copyright Act expressly excludes the right of performance from sound recording ownership rights, and § 980(a)(2) does not. *See id.* at *7 (citing 17 U.S.C. § 114(a-b)).

Based on this analysis, the Court concluded that copyright ownership of a sound recording under § 980(a)(2) includes the exclusive right to publicly perform that recording.

### iii. *Pandora's Publication Theory*

Pandora's ultimate contention is that the exclusive ownership rights described in § 980(a)(2) do not apply to Flo & Eddie's sound recordings because those recordings were "published" when they were sold to the public in the 1960s. *See Mot.* 18:22-24. The argument is not specific to the public performance right primarily at issue in this litigation. Pandora argues that, historically, California's copyright law protected unpublished rights only, and the legislature did not intend to resurrect previously extinguished rights in published sound recordings when it passed § 980(a)(2) in 1982. *Id.* 10:6-11:18, 13:22-15:20; *Reply* 2:12-3:9, 11:14-21.

To reach this conclusion, Pandora begins with analysis of the codified versions of California copyright law in effect when The Turtles were recording and selling their sound recordings. *See Mot.* 10:6-13:21. The two relevant statutes are former Cal. Civ. Code §§ 980 and 983. From 1947 to 1982, § 980 read:

> The author or proprietor of any composition in letters or art has an exclusive ownership in the representation or expression thereof as against all persons except one who originally and independently creates the same or a similar composition.

And the relevant portion of § 983 read:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

> If the owner of a composition in letters or art *publishes it* the same may be used in any manner by any person, without responsibility to the owner insofar as the law of this State is concerned.

Cal. Stats. 1947, c. 1107, p. 2546, § 1; Cal. Stats. 1949, c. 921, p. 1686, § 1 (emphasis added). By the terms of this statutory scheme, an owner of a composition in letters or art only retained exclusive ownership in that composition until he or she *published* it. After publication, the owner's rights in the work were no longer protected under § 980.

 Both Pandora and Flo & Eddie agree that the former California statute treated "publication" as a critical event because that was the point when works became eligible for federal copyright protection. *See Mot.* 2:12-15, 10:7-11:18; *Opp.* 13:13-18, 15:3-12. In Pandora's words, California enacted its statutes to address the "void," the lack of federal protection, for unpublished works. *Mot.* 10:7-11:18. Prior to publication, California's copyright statute protected all "compositions in letters or art" regardless of whether the works were covered by federal copyright law. After publication, that state protection expired. For federally-eligible works, expiration of state coverage was not a problem because that was the point when federal coverage began. However, these statutory schemas left another void – post-publication protection of works that were not eligible for federal coverage. Accordingly to Pandora, California law did not fill this second void. *See id.* 11:19-25.

 Sound recordings were not afforded federal protection until the 1976 Copyright Act. Thus, Pandora explains that when The Turtles sold their recordings to the public in the 1960s, their California copyright protection expired and these sound recordings dropped into the public domain. *Id.* 18:22-24. Pandora does not limit its argument to public performance rights. When The Turtles placed an album on a music store shelf in the 1960s, the public could freely copy, distribute, and perform those sound recordings, so far as California copyright law was concerned.

 The final piece of Pandora's argument attempts to reconcile this statutory landscape – where sound recordings in California had no rights at all after first sale – with the legislature's passage of § 980(a)(2) in 1982. This new statute contained sweeping language about exclusive ownership of sound recordings, but legislative materials indicated that the legislature viewed this provision as simply maintaining rights that already existed. *See Mot.*, Ex. A [Leg. Assemb. B. 3483, 1981-82 Reg. Sess. (Cal. 1982) ("1982 Leg. Hist.")] at 14. Pandora reasons that because California only protected pre-publication sound recording rights before § 980(a)(2), and the legislature wanted to maintain (rather than expand) protection for sound recordings, § 980(a)(2) only protects "exclusive ownership" in pre-1972 sound recordings that have never been published.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

Although this Court did not rely on legislative history to reach its conclusion in the *Sirius* Ruling, it did determine that that history supported its textual interpretation. *See Sirius*, 2014 WL 4725381 at *6-7. Thus, the Court will again consider whether its interpretation of the statutory language is consistent with other indicators of legislative intent.

Pandora's theory results in an impotent law that protects only the tiniest class of sound recordings. Section 980(a)(2) addressed ownership rights in sound recordings that were recorded prior to February 15, 1972, at least a decade before the passage of the law. Under Pandora's interpretation, the legislature's broadly phrased codification of "exclusive ownership rights…as against all persons" was only intended to protect decade-old sound recordings that were never sold to the public or played on the radio. These are sound recordings that the public has never heard. Pandora brainstorms one example of an item in this niche class – recordings of never-released historic live music performances. *See Mot.* 21:1-6.

Pandora is wrong about the intent of the legislature. "[W]ell-accepted rules of statutory construction caution…that 'statutory interpretations which would produce absurd results are to be avoided.'" *Ariz. State Bd. for Charter Schools v. U.S. Dept. of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) (citing *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004)). It would have been strange for the legislature to use such expansive language to cast a law of exceedingly limited scope. Pandora's theory of interpretation is also contradicted by case law from the 1960s, 1970s, and 1980s in which courts applying California law recognize an owner's property interest in its sound recordings after those recordings have been released to the public. *See Capital Records, Inc. v. Erickson*, 2 Cal. App. 3d 526 (1969); *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554 (1984); *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718 (9th Cir. 1984).

Re-tracing Pandora's logic, Pandora ignores a major concept that explains the error in Pandora's overly limited interpretation of sound recording rights in California.

   iv.  *Sound Recordings Rights Under California Law*

Pandora's misstep is that it ignores the California common law's role in maintaining property rights.

Flo & Eddie attempt to explain away the publication issue with three different arguments: (1) § 983(a) was repealed, so it is irrelevant; (2) § 983(a) never applied to sound recordings; and (3) selling records and playing them on the radio never "published" sound recordings under § 983(a). *See Opp.* 8:15-9:11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

In 1982, when amending California's copyright statute in light of the revisions to the 1976 Copyright Act, the legislature repealed § 983(a). *See 1982 Leg. Hist.* at 5. Instead of protecting works once they were "published," the new version of the federal law protected works that were "fixed in a tangible medium of expression." 17 U.S.C. § 301(a). Accordingly, the legislature repealed the preemption-avoiding § 983(a) regarding publication and drafted § 980(a)(1-2) to catch the new sliver of works that was not eligible for federal copyright protection – works that were not fixed in a tangible medium of expression and pre-1972 sound recordings. *See* Cal. Civ. Code § 980(a)(1-2). But Pandora does not claim that § 983(a) has implicitly survived its repeal and applies to current conduct. *See Reply* 8:9-10. Rather, Pandora reasons that because the legislature indicated that it wanted § 980(a)(2) to "maintain" rights for sound recordings, the state of the law prior to 1982 is significant. *See id.* 2:12-3:9, 7:9-15, 8:11-15. This logic is sound. *See, e.g., In re Simoni's Estate*, 220 Cal. App. 2d 339, 341 (1963) ("An important consideration in determining the intention of the Legislature in enacting the new section is the state of the law as it existed prior to the enactment.").

Flo & Eddie's second two arguments – aimed at explaining that California law prior to 1982 did protect sound recordings rights after first sale or performance – are arguments in the alternative. Flo & Eddie argue that either (1) § 983(a) never applied to sound recordings or (2) it applied, but record sales and radio play did not "publish" the recordings. *Opp.* 12:14-22:26. Although Flo & Eddie's reasoning on these points is compelling, Pandora points out that the Ninth Circuit appears to reject both arguments in *Lone Ranger*. *See Reply* 9:3-10:15 (citing *Lone Ranger*, 740 F.2d 718).[3] However, even accepting *Lone Ranger*'s holdings on these two points, that court does not conclude that due to its application of § 983(a), published sound recordings dropped into the public domain and could be used as people pleased. Rather, it reveals that, historically, California recognized and protected property rights in sound recordings not only through its copyright statutes (§§980, 983(a)), but also through common law property concepts. *See Lone Ranger*, 740 F.2d at 725-26; *see also Opp.* 16:23-17:7.

Accordingly, although the Ninth Circuit (1) applied §§ 980 and 983(a) to plaintiff's sound recordings and (2) found that sale to the public and radio play "published" the recordings so as to divest plaintiff's ownership rights under § 983(a), the court maintained that plaintiff had "an intangible property interest in the performances on tape from the time of their recording" and found defendant liable for conversion. *Id.* In recognizing and maintaining this property interest in sound recordings, the Ninth Circuit relied on *Capital Records* and *A&M Records*, which similarly identified and protected owners' rights in sound recordings without regard for a "publication" distinction. *See id.* at 725; *Capital Records*, 2 Cal. App. 3d at 538 (describing the misappropriated property as the "performances embodied on the records"); *A&M Records*, 75

---

[3] Although Lone Ranger was decided in 1984, it analyzes the sound recording rights landscape in California prior to the 1982 statutory amendments. *Lone Ranger*, 740 F.2d at 725.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

Cal. App. 3d at 564 (finding defendant liable for duplicating sound recording performances "owned by A&M Records" without authorization).

The case law indicates that sound recordings never dropped into the public domain so that people could freely exploit them. Regardless of whether §§ 980 and 983(a) applied to sound recordings, and regardless of whether sale of recordings "published" them, California still protected these recordings post-publication through the common law. *See Lone Ranger*, 740 F.2d at 726 (explaining that plaintiff could still make property-based claims regarding sound recording ownership, even if the protections of §§ 980 and 983(a) were no longer available).

This jurisprudence was the existing landscape for sound recordings rights in California when the legislature passed § 980(a)(2) in 1982, not a free-for-all where exploitation of sound recordings after first sale was the accepted status quo. California law had protected property rights in sound recordings through both statutory and common law. When the plaintiff in *Lone Ranger* could not exercise his statutory rights because the court found that he had published the recordings, his rights were not extinguished; rather, they were maintained through common law property doctrines. *Id.* In 1982, the legislature provided that authors of pre-1972 sound recordings have "exclusive ownership" in their recordings (save one exception) until 2047 and abolished § 983(a)'s "publication" limitation.[4] The "publication" repeal was a non-event because sound recording owners already enjoyed post-publication protection in California. Contrary to Pandora's argument, this broadly protective statutory scheme is consistent with a legislative intent to maintain rights and remedies in pre-1972 sound recordings.

The Court rejects Pandora's contention that the legislature did not intend the expansively-phrased protections of § 980(a)(2) to apply to pre-1972 sound recordings that had been previously released to the public. That law would cover practically nothing. Flo & Eddie's sound recording rights are protected under § 980(a)(2). As Pandora recognizes, this Court has interpreted § 980(a)(2) as inclusive of the right to publicly perform sound recordings. *See Mot.* 21:16-23:1 (citing *Sirius*, 2014 WL 4725381 at *9). Accordingly, as required by the second prong of the anti-SLAPP analysis, Flo & Eddie has demonstrated the legal sufficiency of its § 980(a)(2) claim. This statutory violation also supports the UCL claim. Lastly, because the Court concludes that Flo & Eddie has property rights in its sound recordings that are violated

---

[4] The original version of 17 U.S.C. § 301(c) stated that pre-1972 sound recording rights would not be annulled or limited by the Copyright Act until 2047. Pub. L. 94-553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2572. That date has since been extended to 2067, but the California statute has not tracked the change. *See* Pub. L. 105-298, Title I, § 102(a), Oct. 27, 1998, 112 Stat. 2827; 17 U.S.C. § 301(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-7648 PSG (RZx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc., *et al.* | | |

when the recordings are publicly performed without authorization, Flo & Eddie's theories of conversion and misappropriation based on that conduct are also legally sufficient.[5]

Although the conduct underlying the claims in this case constitutes "protected activity" under the anti-SLAPP statute, Flo & Eddie has demonstrated that its claims are meritorious enough to withstand the anti-SLAPP motion.

IV.     Conclusion

For the foregoing reasons, the Court DENIES Pandora's anti-SLAPP motion to dismiss.

**IT IS SO ORDERED.**

---

[5] The Court notes that Flo & Eddie maintains that its claims for violation of the UCL, conversion, and misappropriation based on public performance survive independent of the existence of a public performance right under § 980(a)(2). Because the Court concludes that such a right exists under § 980(a)(2), it has not yet analyzed these arguments.

## CERTIFICATE OF SERVICE

I, Gregory G. Garre, hereby certify that I electronically filed the Excerpts of Record Volumes I and II with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 2, 2015, which will send notice of such filing to all registered CM/ECF users.

                                         /s/ Gregory G. Garre
                                         Gregory G. Garre