No. 15-55287

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

FLO & EDDIE, INC.,

*Plaintiff-Appellee*,

v.

PANDORA MEDIA, INC.,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Central District of California

The Honorable Philip S. Gutierrez

District Court Case No. CV-14-7648 PSG (RZx)
_____

**PLAINTIFF-APPELLEE FLO & EDDIE, INC.'S
OPPOSITION BRIEF**
_____

HENRY GRADSTEIN
MARYANN R. MARZANO
HARVEY GELLER
DANIEL B. LIFSCHITZ
GRADSTEIN & MARZANO, P.C.
6310 San Vicente Boulevard, Suite 510
Los Angeles, California 90048
(323) 776-3100

*Attorneys for Flo & Eddie, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellee Flo & Eddie, Inc. ("F&E") hereby states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

Dated:  November 30, 2015

<div style="margin-left: 40%;">

Respectfully submitted,

By:   /s/ Harvey W. Geller

GRADSTEIN & MARZANO, P.C.
Henry Gradstein
Maryann R. Marzano
Harvey Geller
Daniel Lifschitz
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone:  (323) 776-3100

Attorneys for Plaintiff-Appellee
FLO & EDDIE, INC.

</div>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS .................................................................. 8

    1.    The Parties ............................................................................ 8

          A.    F&E (The Turtles) .................................................... 8

          B.    Pandora .................................................................. 8

    2.    The Litigations ...................................................................... 9

SUMMARY OF ARGUMENT .......................................................... 13

ARGUMENT ................................................................................... 17

I.     PRE-1972 RECORDINGS CANNOT BE PUBLICLY
      PERFORMED WITHOUT A LICENSE ..................................... 18

    A.    California Law Governs This Case ................................ 18

    B.    Civil Code §980(a)(2) Protects Owners of Pre-1972
          Recordings From All Unauthorized Uses ....................... 19

          1.    The Plain Meaning Of §980(a)(2) Controls ......................... 19

          2.    The Legislative History Of §980(a)(2) Posited By
              Pandora Is Irrelevant And Pure Fiction ................................ 26

    C.    Former Civil Code §983(a) Did Not Strip Pre-1972
          Recordings Of Their Protection ..................................... 31

          1.    Civil Code §983(a) Was Repealed ........................................ 32

          2.    The Sale of Records Has Never Constituted
              A General Publication Of The Sounds ................................. 37

3.      Civil Code §983(a) Applied To Compositions,
        Not Recordings ....................................................................... 39

D.      Separate And Apart From §980(a)(2), Pre-1972 Recordings
        Are Also Protected Under California Common Law ...................... 43

        1.      Common Law Tort Claims Were Never
                Affected By §983(a) ................................................. 43

        2.      The Common Law Protects All Rights Inherent In
                The Ownership Of Pre-1972 Recordings ............................... 45

II.     PANDORA'S CONDUCT DOES NOT QUALIFY FOR
        ANTI-SLAPP PROTECTION ................................................................. 49

A.      F&E's Claims Do Not "Arise From" Protected Activity ................. 51

B.      Pandora's Misappropriation Of Pre-1972 Recordings
        Does Not Constitute Speech On A Matter Of Public Interest .......... 53

III.    CERTIFICATION TO THE CALIFORNIA SUPREME COURT
        IS UNNECESSARY ................................................................................. 55

IV.     CONCLUSION ............................................................................................ 58

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*A&M Records, Inc. v. Heilman,*
    75 Cal. App. 3d 554 (1977) ..................................................3, 13, 47

*A&M Records, Inc. v. M.V.C. Distrib. Corp.,*
    574 F.2d 312 (6th Cir. 1978) .......................................................38

*A&M Records v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001) .....................................................51

*ABKCO Music, Inc. v. LaVere,*
    217 F.3d 684 (9th Cir. 2000) ..................................................40, 42

*Allen Archery, Inc. v. Jennings Compound Bow, Inc.,*
    686 F.2d 780 (9th Cir. 1982) ....................................................5, 35

*Altman v. HO Sports Co.,*
    821 F.Supp.2d 1178 (E.D. Cal. 2011) .........................................25

*Balboa Ins. Co. v. Trans Global Equities,*
    218 Cal. App. 3d 1327 (1990) ...............................................47, 48

*Barcellos and Wolfsen v. Westlands Water Dist.,*
    899 F.2d 814 (9th Cir. 1990) .......................................................33

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) .....................................................50

*Bell v. United States,*
    366 U.S. 393, 400 (1961) .............................................................36

*Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.,*
    176 Cal. App. 4th 1597 (2009) ....................................................33

*Big Sur Waterbeds v. Maryland Cas. Co.,*
    1992 U.S. Dist. LEXIS 22596 (C.D. Cal. Dec. 22, 1992)............49

*Bobbs-Merrill Co. v. Straus,*
    210 U.S. 339 (1908)......................................................................40

*Cable/Home Communication Corp. v. Network Productions, Inc.,*
    902 F.2d 829 (11th Cir. 1990) ......................................................51

*Cal. Corr. Peace Officers Assn. v. State of Cal.,*
    189 Cal. App. 4th 849 (2010) .......................................................22

*Callet v. Alioto,*
    210 Cal. 65 (1930) ........................................................................34

*Caminetti v. Pac. Mut. Life Ins. Co.,*
    22 Cal. 2d 344 (1943) ............................................................14, 21

*Capitol Records, Inc. v. Erickson,*
    2 Cal. App. 3d 526 (1969) ...........................................3, 13, 37, 47

*Capitol Records, Inc. v. Mercury Records Corp.,*
    221 F.2d 657 (2d Cir. 1955) ....................................................28, 30

*Capitol Records, Inc. v. Naxos of Am., Inc.,*
    4 N.Y.3d 540 (2005)........................................................38, 40, 42

*Capitol Records, LLC v. SiriusXM Radio, Inc.,*
    2014 WL 7387972 (Cal. Super. Ct. Oct. 14, 2014)...................1, 55

*Capitol Records, LLC v. SiriusXM Radio, Inc.,*
    2014 WL 7150014 (Cal. Super. Ct. Dec. 5, 2014) ...................1, 55

*Capitol Records, LLC v. Bluebeat, Inc.,*
    765 F. Supp. 2d 1198 (C.D. Cal. 2010) .................................. 37-38

*CBS, Inc. v. Garrod,*
    622 F. Supp. 532 (M.D. Fla. 1985) ..............................................38

*Chiatello v. City and County of San Francisco,*
    189 Cal. App. 4th 472 (2010) .......................................................35

iv

*Columbia Pictures, Inc. v. Bunnell,*
    245 F.R.D. 443 (C.D. Cal. 2007)...................................................................50

*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.,*
    110 Cal. App. 4th 26 (2003) .....................................................................54

*Couch v. Telescope Inc.,*
    611 F.3d 629 (9th Cir. 2010) ....................................................................57

*Daghlian v. DeVry Univ., Inc.,*
    574 F.3d 1212 (9th Cir. 2009) ..................................................................34

*Delaney v. Baker,*
    20 Cal. 4th 23 (1999) ...............................................................................31

*Dickman v. Comm'r,*
    465 U.S. 330 (1984).............................................................................24, 45

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)..................................................................................25

*Doe v. Gangland Prods.,*
    730 F.3d 946 (9th Cir. 2013) ....................................................................52

*Dyer v. Childress,*
    147 Cal. App. 4th 1273 (2007) .................................................................53

*Eldred v. Ashcroft,*
    537 U.S. 186 (2003)..................................................................................32

*Employers Ins. of Wausau v. Granite State Ins. Co.,*
    330 F.3d 1214 (9th Cir. 2003) ..................................................................25

*Erie v. Tomkins,*
    304 U.S. 64 (1938)....................................................................................48

*Esberg v. Union Oil Co.,*
    28 Cal. 4th 262 (2002) ...............................................................................4

*Flo & Eddie Inc. v. Sirius XM Radio Inc.,*
　　2014 U.S. Dist. LEXIS 139053 (C.D. Cal. Sept. 22, 2014) ...................... 1, 10

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
　　2014 U.S. Dist. LEXIS 174907 (S.D.N.Y. Dec. 12, 2014) ......................... 30

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
　　Case No. 13-CV-23182 (S.D. Fla.) .............................................................. 10

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
　　Case No. 13-CIV-5784 (S.D.N.Y) ............................................................... 10

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
　　Case No. CV-13-05693 (C.D. Cal.) .............................................................. 10

*Fnb Mortgage Corp. v. Pac. General Corp.,*
　　76 Cal. App. 4th 1116 (1999) ...................................................................... 22

*Geertz v. Ausonio,*
　　4 Cal. App. 4th 1363 (1992) ......................................................................... 22

*Golan v. Holder,*
　　132 S. Ct. 873 (2012) ............................................................................. 34-35

*Goldstein v. California,*
　　412 U.S. 546 (1973) ............................................................. 2, 13, 40, 41, 42

*Gotham Ins. Co. v. Shasta Techs., LLC,*
　　2014 U.S. Dist. LEXIS 47007 (N.D. Cal. Apr. 3, 2014) .............................. 49

*Governing Board v. Mann,*
　　18 Cal.3d 819 (1977) ................................................................................... 34

*Guardianship of Casad,*
　　106 Cal. App. 2d 134 (Cal. App. 1951) ............................................. 5, 15, 36

*Hall v. Time Warner, Inc.,*
　　153 Cal. App. 4th 1337 (2007) .............................................................. 52, 54

*Harper & Row Publishers, Inc. v. Nation Enterprises,*
  471 U.S. 539 (1985).....................................................................................50

*Hendler v. United States,*
  952 F.2d 1364 (Fed. Cir. 1991) .................................................................24

*Hicks v. Feiock,*
  485 U.S. 624 (1988).....................................................................................55

*Hill v. Hill,*
  79 Cal. App. 2d 368 (1947) ..................................................................17, 46

*Hilton v. Hallmark Cards,*
  599 F.3d 894 (9th Cir. 2010) .....................................................................52

*Hollywood Screentest Of America, Inc. v. NBC Universal, Inc.,*
  151 Cal. App. 4th 631 (2007) .....................................................................48

*In re Gonzalez,*
  456 B.R. 429 (Bankr. C.D. Cal. 2011) .......................................................35

*International News Service v. Associated Press,*
  248 U.S. 215 (1918).....................................................................................48

*J.A. Jones Construction Co. v. Superior Court,*
  27 Cal. App. 4th 1568 (1994) .....................................................................28

*Joyce G. v. Superior Court,*
  38 Cal. App. 4th 1501 (1995) .....................................................................56

*Krause v. Rarity,*
  210 Cal. 644, 653 (1930) .............................................................................33

*Lane v. Whitaker,*
  50 Cal. App. 2d 327 (1942) ...........................................................13, 24, 45

*Lone Ranger Television, Inc. v. Program Radio Corp.,*
  740 F.2d 718 (9th Cir. 1984) ..........................................................5, 36, 44

vii

*Makaeff v. Trump Univ., LLC,*
    736 F.3d 1180 (9th Cir. 2013) ....................................................................6

*McAlexander v. Siskiyou Joint Cmty. Coll.,*
    222 Cal. App. 3d 768 (1990) ...........................................................14, 21

*McBarron v. Kimball,*
    210 Cal. App. 2d 218 (1962) ....................................................................35

*Mello v. Great Seneca Fin. Corp.,*
    526 F. Supp. 2d 1024 (C.D. Cal. 2007) ...................................................50

*Mendly v. County of Los Angeles,*
    23 Cal. App. 4th 1193 (1994) ..................................................................33

*Mercury Record Prods. v. Econ. Consultants, Inc.,*
    64 Wis. 2d 163 (1974) .............................................................................38

*Metro One Telcoms., Inc. v. Comm'r,*
    704 F.3d 1057 (9th Cir. 2012) .................................................................20

*Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.,*
    199 Misc. 786 (Sup. Ct. 1950) ..........................................................29, 38

*Mindys Cosmetics, Inc. v. Dakar,*
    611 F.3d 590 (9th Cir. 2010) ...................................................................17

*Napa State Hospital v. Flaherty,*
    134 Cal. 315 (1901) ...............................................................5, 15, 33, 36

*Nat'l Union Fire Ins. Co. v. Siliconix, Inc.,*
    729 F. Supp. 77 (N.D. Cal. 1989) ...........................................................49

*Newdow v. Rio Linda Union Sch. Dist.,*
    597 F.3d 1007 (9th Cir. 2010) .................................................................46

*Newton v. Diamond,*
    204 F. Supp. 2d 1244 (C.D. Cal. 2002) ................................................3, 39

*No Doubt v. Activision Publ'g, Inc.,*
    192 Cal. App. 4th 1018 (2011) ....................................................................52

*Ojala v. Bohlin,*
    178 Cal. App. 2d 292 (1960) ......................................................................47

*Palmer v. Stassinos,*
    419 F. Supp. 2d 1151 (N.D. Cal. 2005) ......................................................34

*People v. Kwok,*
    63 Cal. App. 4th 1236 (1998) ...............................................................23, 45

*People v. Mgebrov,*
    166 Cal. App. 4th 579 (2008) .....................................................................22

*Preferred Commc'ns, Inc. v. City of Los Angeles,*
    754 F.2d 1396 (9th Cir. 1985) ....................................................................52

*RCA Mfg. Co. v. Whiteman,*
    114 F.2d 86 (2nd Cir. 1940) ................................................................. 28-29

*Rea v. Blue Shield of Cal.,*
    226 Cal. App. 4th 1209 (2014) ...................................................................28

*Reagan v. Sausalito,*
    210 Cal. App. 2d 618 (1962) ......................................................................33

*Richlin v. MGM Pictures, Inc.,*
    531 F.3d 962 (9th Cir. 2008) ......................................................................32

*Riverside Cty. Sheriff's Dept. v. Stiglitz,*
    60 Cal. 4th 624 (2014) ...............................................................................31

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984) .............................................................................24, 45

*Russian River Watershed Prot. Comm. v. City of Santa Rosa,*
    142 F.3d 1136 (9th Cir. 1998) ....................................................................12

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
    206 F.3d 1322 (9th Cir. 2000) .................................................................. 36

*Silvers v. Sony Pictures Entm't, Inc.,*
    402 F.3d 881 (9th Cir. 2005) .................................................................... 23

*SiriusXM v. L.A. Superior Court,*
    2015 Cal. LEXIS 2373 (Cal. Apr. 29, 2015)............................................... 56

*Siskiyou Cty. Farm Bureau v. Dep't of Fish & Wildlife,*
    237 Cal. App. 4th 411 (2015) ................................................................... 27

*Smith v. Fair Emp't & Hous. Com,*
    12 Cal. 4th 1143 (1996) ........................................................................... 40

*Smith v. Ford Motor Co.,*
    462 F. App'x 660 (9th Cir. 2011)............................................................... 57

*Smith v. Union Oil Co.,*
    166 Cal. 217 (1913) ................................................................................. 20

*Southern Service Co., v. County of Los Angeles,*
    15 Cal.2d 1 (1940) ................................................................................... 34

*Stewart v. Rolling Stone LLC,*
    181 Cal. App. 4th 664 (2010) ................................................................... 54

*Tamkin v. CBS Broad., Inc.,*
    193 Cal. App. 4th 133 (2011) ................................................................... 52

*United States v. Gonzales,*
    520 U.S. 1 (1997)......................................................................................18

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.,*
    249 F.3d 958 (9th Cir. 2001) .....................................................................57

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989)..................................................................................52

*Waring v. WDAS Broadcasting Station, Inc.*,
    327 Pa. 433 (1937) ................................................................. 30, 38

*Webb v. Smart Document Solutions, LLC*,
    499 F.3d 1078 (9th Cir. 2007) ............................................... 55

*Weinberg v. Feisel*,
    110 Cal. App. 4th 1122 (2003) .............................................. 53

*Welco Elecs., Inc. v. Mora*,
    223 Cal. App. 4th 202 (2014) ................................................ 47

*White-Smith Music Publishing Co. v. Apollo Co.*,
    209 U.S. 1 (1908) .................................................................. 40

*World Fin. Grp., Inc. v. HBW Ins. & Fin. Services, Inc.*,
    172 Cal. App. 4th 1561 (2009) .............................................. 54

*Ylst v. Nunnemaker*,
    501 U.S. 797 (1991) .............................................................. 56

*Young v. McCoy*,
    147 Cal. App. 4th 1078 (2007) .............................................. 20

*Younger v. Superior Court*,
    21 Cal.3d 102 (1978) ............................................................. 34

**<u>Statutes</u>**

17 U.S.C. §106 ................................................................................ 45

17 U.S.C. §301(c) ..................................................................... 7, 13, 18, 25

17 U.S.C. §303(b) ......................................................................... 30

Cal. Pen. Code §653h ................................................................. 3, 49

Civ. Code §654 ...................................................................... 13, 23, 24, 45

Civ. Code §980(a)(2) ............................................................... passim

Civ. Code §983(a) ............................................................................passim

Civ. Code §3530 ...............................................................................33

Code Civ. Proc. §425.16 ..............................................................11, 49

Code Civ. Proc. §425.16(e)(4) ........................................................51

Code. Civ. Proc. §1858 ...................................................................22

Gov. Code §9606 .............................................................................34

## Court Rules

Ninth Circuit Local Rule 29-1 .........................................................12

## Other Authorities

Code Commissioner's Note of 1874.....................................................42

*Random House College Dictionary* 1011 (rev. ed. 1980) .......................49

1-4 MELVILLE B. NIMMER AND DAVID NIMMER
    NIMMER ON COPYRIGHT (Matthew Bender, Rev. Ed. 2015) .................. 38-39

*Webster's Ninth New Collegiate Dictionary* (1991)................................49

## PRELIMINARY STATEMENT

While Pandora Media, Inc. ("Pandora") ostensibly is appealing from the denial of its anti-SLAPP motion, that motion was really a pretext for it to appeal the adverse summary judgment ruling received by Sirius XM Radio, Inc. ("SiriusXM") in a parallel action filed by Flo & Eddie, Inc. ("F&E") that is also pending before District Court Judge Philip S. Gutierrez. In his summary judgment ruling against SiriusXM, Judge Gutierrez held that, under California law, the exclusive ownership of the artistic performances embodied in sound recordings fixed prior to February 15, 1972 ("pre-1972 recordings") necessarily includes all rights attendant to that ownership, including the rights of reproduction, distribution, *and* public performance. *Flo & Eddie Inc. v. Sirius XM Radio Inc*., 2014 U.S. Dist. LEXIS 139053, *23 (C.D. Cal. Sept. 22, 2014).

Judge Gutierrez's ruling was so well reasoned that it was thereafter adopted and followed in its entirety by Judge Mary Strobel in a similar California *state* court action. *Capitol Records, LLC v. SiriusXM Radio, Inc.*, 2014 WL 7387972 (Cal. Super. Ct. Oct. 14, 2014) ("*Capitol Records I*"), *supplemented on reconsideration*, 2014 WL 7150014 (Cal. Super. Ct. Dec. 5, 2014) ("*Capitol Records II*"). Judge Strobel's state court rulings are nowhere to be found in Pandora's brief and completely undermine its argument that "[n]o California court

has ever recognized the extraordinary state law rights that Flo & Eddie seek to assert." **(Pandora Opening Brief ["Br."]:55)**

Far from being "extraordinary," given California's broad statutory and common law protection of pre-1972 recordings, the rights that F&E seek to protect are actually rather ordinary. California has consistently been a leader in the protection of pre-1972 recordings, as well it should be. Indeed, pre-1972 recordings are the historical backbone of the music industry, which is why it is not surprising that in order to accomplish its goal of providing its 200 million registered users with all the music "wherever and whenever" they wanted it, Pandora concluded that it needed to populate its music service with tens of thousands of those recordings. What *is* surprising, however, is that Pandora refused to obtain licenses or pay any royalties in connection with its use of pre-1972 recordings. Instead, Pandora summarily concluded that they "were in the public domain," and thus were free for anyone to use, for any purpose, forever.

Only, they were not. California (like many other states) has for decades exercised the authority ceded to it by Congress to protect pre-1972 recordings, which Congress mandated shall not be annulled or limited in any respect by federal copyright law until 2067. 17 U.S.C. §301(c); *Goldstein v. California*, 412 U.S.

546 (1973).[1]  What California has protected, and what it continues to protect, are the recorded artistic performances embodied in pre-1972 recordings – in other words, *the sounds* – and it does so in three different ways (one criminal and two civil).  First, in 1968, the California legislature enacted Cal. Pen. Code §653h, which criminalized the unauthorized duplication of recordings.  Second, in two seminal decisions (one in 1969 and the other in 1977), the unauthorized use of pre-1972 recordings was held to constitute misappropriation and conversion under California's common law.  *Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526, 537 (1969); *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 560 (1977).  Third, in 1982, the California legislature enacted Civ. Code §980(a)(2), which expressly granted "exclusive ownership...as against all persons" to "the author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972," with a single exception for the creation of "imitat[ive]" recordings.

Pandora's response to California's longstanding protection of pre-1972 recordings, and the protection of §980(a)(2) in particular, is to claim that it really does not exist because Civ. Code §983(a) – which was *repealed* in 1982 –

---

[1] Pre-1972 recordings are to be distinguished from the musical compositions they embody. *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002). Musical compositions are protected by federal copyright law regardless of their date of creation and are not at issue in this litigation.

permanently stripped pre-1972 recordings of all common law copyright protection once they were distributed to the public. **(Br.:1)** According to Pandora, Civ. Code §983(a) operated to place pre-1972 recordings in the public domain upon their publication and, thus, when §980(a)(2) was enacted in 1982, it was only to provide protection for those few unknown recordings that had not yet been published.

Pandora's argument finds no support in the plain and unambiguous language of §983(a), which said nothing about the public domain and spoke only of a limitation on liability during its existence.[2] More importantly, Pandora's argument finds no support in the plain and unambiguous language of §980(a)(2), which has only one requirement for inclusion; namely, that the recording must have been fixed by February 15, 1972. That is it. There are no other requirements in the statute, and there most certainly is no requirement (as Pandora erroneously contends) that the recording must also have been unpublished as of the time that §980(a)(2) was enacted. While Pandora weaves a highly fictionalized tale regarding the legislature's intent in enacting §980(a)(2), it skips right past the most basic tenet of statutory construction: where a statute is "clear and unambiguous 'there is no need for construction and courts should not indulge in it.'" *Esberg v. Union Oil Co.*, 28 Cal. 4th 262, 268 (2002).

---

[2] Civ. Code §983(a) provided: "If the owner of a composition in letters or art publishes it the same may be used in any manner by any person, without responsibility to the owner, insofar as the law of this State is concerned."

But even beyond the plain and unambiguous language of §980(a)(2), Pandora's reliance on §983(a) fails for a more fundamental reason. Because §983(a) was repealed in its entirety, it cannot be used to for any purpose in this litigation. A repealed statute must be treated as though it ***never existed***, *Napa State Hospital v. Flaherty*, 134 Cal. 315, 317-18 (1901), and any decisions founded on that statute automatically cease to have any authoritative force, *Allen Archery, Inc. v. Jennings Compound Bow, Inc.*, 686 F.2d 780 (9th Cir. 1982), *Guardianship of Casad*, 106 Cal. App. 2d 134, 141-142 (Cal. App. 1951). This lack of authoritative force necessarily must extend to the portion of Ninth Circuit's decision in *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718 (9th Cir. 1984) that relied on §983(a) to limit Lone Ranger's common law ***copyright*** claim. While Pandora touts this limitation throughout its brief, it ignores its lack of authoritative force.[3] Pandora also ignores that the limitation on copyright liability imposed by the Ninth Circuit (albeit wrongly) in *Lone Ranger* had no bearing on the common law ***tort*** claims of misappropriation and conversion. *Id*. at 725.

There are two more problems with §983(a) that Pandora ignores. Pre-1972 recordings were not "published" by their sale or broadcast; thus, the limitation of

---

[3] The *Lone Ranger* court should never have relied on §983(a) in the first place. It did so because it was "in force at the time of the filing of this suit." *Id*. at 725. However, that was the wrong test. It is not enough for a statute to be in force when an action is filed, it must be in force when an action is ***concluded***, *Napa State Hospital*, 134 Cal. at 318, and §983(a) was not.

liability in §983(a) never applied to them.  In addition, the plain language of §983(a) does not even purport to encompass recordings, only "composition[s] in letters or art," which in the context of music meant the underlying compositions embodied in recordings, not the recordings themselves.  This, of course, makes perfect sense given that the phrase "composition[s] in letters or art" was first used by the California legislature before recordings had even been invented.

Try as it might, Pandora cannot escape the ultimate irrelevance of §983(a) to the issues in this case.  Section 983(a) does not alter the scope of protection provided by §980(a)(2) and never had any applicability in determining the scope of protection provided by common law claims of misappropriation and conversion. Pandora is simply using §983(a) as a vehicle in order to obtain immediate appellate review of the summary judgment ruling against SiriusXM by repurposing SiriusXM's arguments in the context of an anti-SLAPP motion.  While the dissenting Justices in *Makaeff v. Trump Univ.*, LLC, 736 F.3d 1180 (9th Cir. 2013) can certainly add what Pandora is doing to their list of problems with the anti-SLAPP process, it does not change the ultimate outcome.  That is because even if Pandora could satisfy its burden under the first prong of the anti-SLAPP statute, it still loses, as F&E has shown more than a probability that it will win.  Like SiriusXM, Pandora cannot avoid the simple fact that under plain and unambiguous California law, the ownership of pre-1972 recordings operates to exclude all

unauthorized uses of those recordings. Thus, the method of infringement chosen by Pandora (*i.e*., reproduction, distribution, or public performance) is of no consequence; under the law, ***all unlicensed uses are forbidden***.

Because the legal effect of "exclusive ownership" under California law makes the issues in this case quite easy, Pandora and its amici spend the vast majority of their briefs imploring this Court to base its decision on everything but that law. They insist that federal copyright law has a role to play in this case even though Congress expressly prohibited federal courts from using that law to limit or annul state law. *See* 17 U.S.C. §301(c). They insist that a Second Circuit case overturned 60 years ago for wrongly predicting ***New York*** law somehow became (and remained) the law in California. They insist upon consideration of public policy issues that are not within the province of the Court. And, finally, they insist that the Court treat secondary sources and "universal understandings" (whatever those are) that *contradict* California law as though they *trump* California law. None of this has any bearing on California law, which is where this case starts and ends.

## STATEMENT OF FACTS

1. **The Parties**.

   A. **F&E (The Turtles).**

   The Turtles are one of the great American rock bands, with a string of chart-topping 1960s hits including "Happy Together," "It Ain't Me Babe," "She'd Rather Be With Me," "You Baby," "She's My Girl," and "Elenore." **(ER157, ¶7)** Since 1971, The Turtles' recordings have been owned by F&E, a corporation controlled by two of the band's founding members – Howard Kaylan and Mark Volman. For over 40 years, F&E has exploited these recordings by licensing the rights to: (a) make and sell records, (b) use the recordings in movies, TV shows, and commercials, and (c) exploit the recordings digitally, including through the iTunes and Amazon storefronts. **(ER157, ¶¶8-9)**

   B. **Pandora.**

   Pandora is one of the leading internet radio service operators in the United States, offering a personalized music experience for its registered users "wherever and whenever they want to listen to radio on a wide range of smart phones, tablets, traditional computers, car audio systems and a range of other internet-connected devices." **(ER156)** Pandora's entire business is built around selling the music of others, which it monetizes in two different ways: (1) through audio advertisements between songs and visual ads displayed while music is actually playing; and (2) by

8

offering an advertisement-free premium service called "Pandora One" for which it charges a monthly fee of $4.99.  **(ER160, ¶21)**  Pandora has been quite successful at selling its music service.  Indeed, as of December 31, 2013, it had more than 200 million registered users and "more than a 70% share of internet radio among the top 20 stations and networks in the United States."  In the first eleven months of 2013 alone, Pandora streamed 15.31 billion hours of radio time.  **(ER159, ¶17)**

Because Pandora understands that having a vast range and array of music is critical to the success of its music service, it populated that service with thousands of pre-1972 recordings.  In fact, Pandora offers and advertises stations *dedicated* to pre-1972 recordings, such as "50s Rock 'n' Roll," "60s Oldies," "Motown," "Doo-Wop," "70s Folk," "Early Jazz," "Standards," "Classic Soul," "Jam Bands," and "Classic Rock." **(ER159, ¶18)**  However, although Pandora readily acknowledges that to "secure the rights to stream music content over the internet, [it] must obtain licenses from, and pay royalties to, copyright owners of both sound recordings and musical works," it nevertheless chose not to obtain licenses from any of the owners of pre-1972 recordings, including F&E.  **(ER156, ¶2)**

## 2.    The Litigations.

On August 1, 2013, F&E filed a predecessor action against SiriusXM – which, like Pandora, exploited pre-1972 recordings without licenses – alleging on behalf of itself and a class of owners of pre-1972 recordings claims for violation of

Civ. Code §980(a)(2), misappropriation, unfair competition, and conversion, and sought (on behalf of itself and the putative class) damages, restitution, and injunctive relief. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc*., Case No. CV-13-05693 (C.D. Cal.).[4]

On June 9, 2014, F&E filed a motion for summary judgment in the *SiriusXM* case, contending that the broad ownership rights to the artistic performances embodied in pre-1972 recordings necessarily include the right to exclude SiriusXM from using or exploiting that performance ***in any manner whatsoever*** without a license. As F&E explained, California protected ***all*** rights inherent in ownership of pre-1972 recordings, including the public performance right. SiriusXM opposed F&E's motion on the basis that the public performance right is not one of the rights inherent in the ownership of pre-1972 recordings. In a detailed opinion issued September 22, 2014, the District Court granted F&E's motion, holding that SiriusXM's unauthorized public performance of pre-1972 recordings was a violation of Civ. Code §980(a)(2) and constituted misappropriation and conversion. *Flo & Eddie Inc.*, 2014 U.S. Dist. LEXIS 139053 at *22.

---

[4] Because pre-1972 recordings are governed on a state-by-state basis, F&E filed two additional federal class actions against SiriusXM: one in New York on August 16, 2013, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Case No. 13-CIV-5784 (S.D.N.Y.) and one in Florida on September 3, 2013, *Flo & Eddie, Inc. v. SiriusXM Radio, Inc.*, Case No. 13-CV-23182 (S.D. Fla.).

With the right of public performance confirmed, F&E filed the instant action against Pandora on October 2, 2014, alleging the same claims for violation of Civ. Code § 980(a)(2), misappropriation, unfair competition, and conversion. On December 19, 2014, Pandora filed a motion to strike the Complaint pursuant to California's anti-SLAPP statute (Civ. Code § 425.16). Because Pandora knew that the District Court would reject any arguments previously made by SiriusXM, Pandora layered on top of those arguments a strained reading of the statutory history behind §§980(a)(2) and 983(a), which it then tried to tie into this Court's ruling in *Lone Ranger*. The District Court rejected Pandora's arguments and denied its motion to strike on February 23, 2015. Pandora filed its notice of appeal the following day.

On September 2, 2015, Pandora filed its opening brief. Since then, nine *amicus curiae* have sought leave to file briefs appeared to support Pandora:

1. The Electronic Frontier Foundation ("EFF")

2. Public Knowledge ("PK")

3. Computer & Communications Industry Association ("CCIA")

4. The National Association of Broadcasters ("NAB")

5. SiriusXM

6. Yale Law School Information Society Project ("Yale")

7. Copyright & Intellectual Property Law Professors ("IP Professors")

11

8.  Gary Pulsinelli, Julie Ross, Peter Jaszi, and Brandon Butler ("Various Professors")

9.  Association for Recorded Sound Collections ("ARSC")

Cumulatively, the proposed amicus briefs swell Pandora's word limitation from 14,000 to well in excess of 63,000. Because some of the amicus briefs mimic Pandora's opening brief, proposed amici should have heeded the Ninth Circuit's Advisory Committee Note to Local Rule 29-1, which expresses a very strong preference for the filing of a joint brief. More problematic are the proposed amicus that raise arguments that Pandora has never raised and, thus, are not even proper for consideration. *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1141 (9th Cir. 1998) ("We do not review issues raised only by an amicus curiae.").[5] Ultimately, while all nine proposed amicus briefs are deeply flawed from a merits perspective, F&E filed an opposition to the motions for leave filed by CCIA, Yale, IP Professors, Various Professors, and ARSC. These five briefs cross the line from merely being erroneous in their advocacy to not even coming close to satisfying the standard for leave being granted.

---

[5] To the extent leave is granted for any of the amicus to present arguments not raised by Pandora, F&E should be given an opportunity to brief those issues.

## SUMMARY OF ARGUMENT

Congress has unequivocally ceded to the states exclusive authority for protecting pre-1972 recordings, which may not be annulled or limited in any respect by federal copyright law until 2067. *See* 17 U.S.C. §301(c); *Goldstein, supra*. For many decades, California has provided that protection pursuant to §980(a)(2), and for even longer through the common law torts of misappropriation, unfair competition, and conversion. That protection results from the fact that California considers the artistic performances embodied in pre-1972 recordings (*i.e.*, the sounds) to be property, *Erickson*, 2 Cal. App. 3d at 537; *Heilman*, 75 Cal. App. 3d at 560, the exclusive ownership of which operates as a matter of law to forbid ***all*** unauthorized uses. Civ. Code §654 ("[t]he ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others"); *Lane v. Whitaker,* 50 Cal. App. 2d 327, 330 (1942) ("[O]wnership is the right of a person to possess and use a thing to the exclusion of others.").

The statutory codification of exclusive ownership in §980(a)(2) for pre-1972 recordings extends to all recordings fixed prior to February 15, 1972, and does not distinguish between different types of recordings or different uses of those recordings. It is precisely because §980(a)(2) is so clear that Pandora urges this Court to unilaterally revise it so that it only covers certain types of pre-1972 recordings (those that had not been "published" prior to the enactment of

§980(a)(2) in 1982), and further revise it so that it only protects against certain types of unauthorized uses (reproduction and distribution, but not public performance). Pandora's requested revisions fly in the face of the plain and unambiguous language of §980(a)(2), which not only forecloses Pandora's construction arguments, *McAlexander v. Siskiyou Joint Cmty. Coll.*, 222 Cal. App. 3d 768, 775 (1990), but also Pandora's desire to have the statute construed based on legislative history, *Caminetti v. Pac. Mut. Life Ins. Co.*, 22 Cal. 2d 344, 353-54, (1943).

Despite the clarity of §980(a)(2) – and thus the irrelevance of legislative history – Pandora engages in an elaborate and highly selective examination of the legislative history behind an unrelated statute (Civ. Code §983(a)) to argue that §980(a)(2) was never intended to be a grant of rights. Section 980(a)(2) does not need to be a grant of rights for Pandora to lose, but it was. Indeed, the very documents cited by Pandora show that the legislature *did,* in fact, use affirmative grant language to describe the effects of §980(a)(2). Pandora's careful editing of the legislative history is highly misleading.

But Pandora does more than just try and use §983(a) to strip §980(a)(2) of its plain meaning, it also tries to use §983(a) to strip pre-1972 recordings of *any* protection under California law. That effort fails on every level, starting with the fact that §983(a) was not a divestiture of rights, but only a limitation of common

14

law *copyright* liability. Any other conclusion would render inexplicable the common law *tort* rulings in *Erickson*, *Heilman*, and *Lone Ranger* – all of which involved pre-1972 recordings that had been (by Pandora's argument) published under §983(a), yet liability was still found.

But for a more important reason, this Court does not even need to be concerned with §983(a). Upon its repeal in 1982, §983(a) ceased to exist and must now be treated as if it never existed. *Napa State Hospital*, 134 Cal. at 317-18. That also means that any case law that relied on §983(a) to limit common law copyright liability (such as *Lone Ranger*) ceased to have authoritative force for that purpose. *Guardianship of Casad*, 106 Cal. App. 2d at 141-42. Pandora treats *Lone Ranger's* reliance on §983(a) as if it is still good law when it is not and, ironically, never was since §983(a) was repealed prior to the conclusion of that case. *Napa State Hospital*, 134 Cal. at 318.

Pandora's reliance on §983(a) is also misplaced for two additional reasons. *First*, pre-1972 recordings were not "published" upon distribution for the purposes of §983(a); thus, the limitation in §983(a) was never triggered as a matter of law for recordings. Because the entire purpose of copyright's "publication" doctrine was to demarcate when federal protection of a work took over for state protection, it made no sense to apply that doctrine to works not capable of attaining federal protection (*i.e.* pre-1972 recordings), as doing so would have obliterated the

15

economic incentive for a record producer to ever actually sell a recording. It is for this reason states have uniformly held that recordings (unlike other copyrightable matter) are not published upon distribution and why Pandora's sole case to the contrary (*Whiteman*) was overruled on that very point. ***Second***, §983(a) did not even apply to recordings. The plain language of §983(a) extends only to "composition[s] in letters or art," which encompasses musical compositions (as they are traditionally copyrightable subject matter), but not sound recordings (which are not compositions, but rather captured performances thereof).

Because Pandora is unable to extricate pre-1972 recordings from the protection of §980(a)(2) and the common law, it tries one last gambit: it claims that the protection of pre-1972 recordings excluded all unauthorized uses except unauthorized public performances. This dissection of unauthorized uses finds no support in the plain language of §980(a)(2) or in basic notions of property law. Exclusive ownership of property, such as the artistic performances embodied in pre-1972 recordings, *begins* with the proposition that the entire bundle of rights attendant to ownership is included. The law does not distinguish among the various rights because they are ***all*** protected. Similarly, because the concomitant ability to exclude extends to all unauthorized uses of property, the method of infringement chosen by Pandora is of no consequence; ***all*** unlicensed uses are forbidden. There simply is no principled way for Pandora to explain why only

16

*certain* rights attendant to ownership (*i.e.,* reproduction and distribution) should be actionable under the law, but not others (*i.e.,* public performance) when they all emanate from the same source under California law.

Pandora cannot avoid this obvious conclusion by arguing for a narrow construction of California law bounded by the precise conduct at issue in *Erickson* and *Heilman* (*i.e.*, reproduction and distribution). Those courts never purported to define the full panoply of unauthorized uses for pre-1972 recordings under California law. They were simply deciding the actual cases before them based on their specific facts, as that is all they were permitted to do. *See Hill v. Hill*, 79 Cal. App. 2d 368, 370 (1947). The enduring proposition from *Erickson* and *Heilman* that is important for this case and that Pandora cannot escape is that the artistic performances in pre-1972 recordings are property, the unauthorized taking of which creates liability for misappropriation, unfair competition, and conversion.

## ARGUMENT

Although Pandora's arguments absurdly equate free speech with piracy, the real thrust of its motion is to challenge the summary judgment ruling against SiriusXM. Therefore, F&E begins its analysis by "demonstrat[ing] a probability of prevailing on the challenged claims," *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). That is also where Pandora's case ends.

## I.    PRE-1972 RECORDINGS CANNOT BE PUBLICLY PERFORMED WITHOUT A LICENSE.

### A.    California Law Governs This Case.

California law, and California law alone, governs this case.  Unlike recordings made *after* February 15, 1972, recordings made *prior* to that date are protected by state law (rather than federal law).  While always the case, this was first codified by Congress in the Sound Recording Amendment of 1971, which granted federal copyright protection to ***post***-1972 recordings.  In so doing, Congress made clear that with respect to pre-1972 recordings, "any rights or remedies under the common law or statutes of any state shall not be annulled or limited by this title until February 15, 2067."  17 U.S.C. §301(c).  Congress's use of the phrase "any rights or remedies" shows the breadth of §301(c), as "any" rights means "all" rights.  *United States v. Gonzales*, 520 U.S. 1, 5 (1997).

By enacting §301(c), Congress unequivocally ceded to the states full and complete jurisdiction with respect to pre-1972 recordings, as confirmed by the Supreme Court in *Goldstein*.  However, Pandora and its amici continue to ignore the express language of §301(c), imploring this Court to determine the scope of California law based on the legislative process and decisions made by Congress with respect to ***post***-1972 recordings. **(Br.:2-3)**  Thus, the lengthy discussions by Pandora and its amici of the history of the protection of ***post***-1972 recordings under the federal Copyright Act, the history of the performance right in ***post***-1972

18

recordings, Congressional legislative history and testimony, and reports and studies provided to Congress by the Copyright Office are of no consequence or relevance.[6] **(Br.:6-12, 17-18, 39, 43, 47-48, 50-51, 53)**  In granting the states the sole and express power to independently protect pre-1972 recordings, Congress did not say "do as we do," but rather "do as you want" until 2067.[7]

And that is what California did, starting with its recognition that the artistic performances embodied in pre-1972 recordings are considered property, and are therefore entitled to statutory and common law protection regardless of how they are infringed or what technology is used to accomplish that infringement.

### B.  Civil Code §980(a)(2) Protects Owners Of Pre-1972 Recordings From All Unauthorized Uses.

#### 1.  The Plain Meaning Of §980(a)(2) Controls.

The California legislature enacted §980(a)(2) in 1982 for the sole purpose of protecting pre-1972 recordings.  It serves no other purpose, and could not be any

---

[6] Proposed amici's focus on federal law and Congressional legislative history and testimony is remarkable both in its volume and in its irrelevance. *See* **(EFF:3,7-12**; **PK:3-4, 7-20**; **CCIA:5-6, 8-19**; **NAB:10-13, 15, 25-26, 29-30**; **SiriusXM:2, 4-5, 11-13, 20-25**; **Yale:7-17, 19-27, 30-31**; **IP Professors I:6-7, 13-14, 16-17, 19-20**; **Various Professors:1-38**; **and ARSC:4-7.)**

[7] In light of §301(c), it is not clear why Pandora's amici argue that the issue of a public performance right in pre-1972 recordings is best resolved by Congress when Congress itself does not share that view. **(EFF:15**; **SiriusXM:26-29**; **IP Professors I:viii, 20**; **and ARSC:10.)**

clearer in its simplicity. It is for that reason that Pandora attacks the core goal of §980(a)(2) by weaving a wildly speculative tale about legislative intent that studiously avoids the plain and unambiguous language in the statute. However, "[w]here the words of a statute are not ambiguous and their effect is not absurd, the court cannot give it other than its plain meaning." *Smith v. Union Oil Co.*, 166 Cal. 217, 224 (1913). The plain meaning rule is preeminent, *Metro One Telcoms., Inc. v. Comm'r*, 704 F.3d 1057, 1063 (9th Cir. 2012), and presumes that lawmakers meant what they said. *Young v. McCoy*, 147 Cal. App. 4th 1078, 1083 (2007). And it is the plain meaning rule that defeats Pandora's arguments, as §980(a)(2) could not be any clearer:

> The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an ***exclusive ownership*** therein until February 15, 2047, ***as against all persons*** except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording. (emphasis added)

20

There is nothing the least bit ambiguous about the phrase "exclusive ownership...as against all persons," nor can there be any dispute that the sole requirement for inclusion within §980(a)(2) is that the recording must have been filed prior to February 15, 1972.  Yet, Pandora claims that the legislature *never* intended for §980(a)(2) to protect all recordings fixed prior to February 15, 1972, only those few pre-1972 recordings that were ***unpublished*** as of the date that §980(a)(2) was enacted.  **(Br.:32-41)**  However, that is not what §980(a)(2) says.  On its face, §980(a)(2) treats all recordings fixed prior to February 15, 1972 the same and makes no distinction between published and unpublished recordings.[8]

The all-inclusive language in §980(a)(2) is the *clearest* evidence of the intent of the legislature and is the *only* intent that can be considered here, given that the statute is clear and unambiguous.  *Caminetti*, 22 Cal. 2d at 353-54 ("The intent of the Legislature must be ascertained from the language of the enactment and where, as here, the language is clear, there can be no room for interpretation."); *see also McAlexander*, 222 Cal. App. 3d at 775 ("It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning.  An intent that finds no expression in the words of the statute

---

[8] As explained in Section I(C)(2) *infra*, the distinction between published and unpublished works is an arcane concept that existed under the 1909 Copyright Act and has repeatedly been held to have no application to pre-1972 recordings.

cannot be found to exist.").  Moreover, an unambiguous statute ends the search for legislative intent and precludes using legislative history to supplant that intent. *Cal. Corr. Peace Officers Assn. v. State of Cal.*, 189 Cal. App. 4th 849, 862 (2010); *People v. Mgebrov*, 166 Cal. App. 4th 579, 591 (2008).

While Pandora would like this Court to revise §980(a)(2) in order to exclude published recordings, the Court is barred from doing that pursuant to Code Civ. Proc. §1858.[9]  As importantly, imposing such an exclusion would violate basic rules of statutory interpretation.  Indeed, because §980(a)(2) specifically identifies one exception to its protection – namely, as against "one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording" – it must be presumed that there are no other exceptions, including one for published recordings.  *Geertz* v. *Ausonio,* 4 Cal. App. 4th 1363, 1370 (1992) ("We presume the Legislature included all the exceptions it intended to create."); *Fnb Mortgage Corp.* v. *Pac. General Corp.,* 76 Cal. App. 4th 1116, 1133 (1999) ("where exceptions to a general rule are specified by statute, other exceptions are not to be implied or

---

[9] Code Civ. Proc. §1858 provides:
> In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted...

presumed, absent a discernible and contrary legislative intent."); *see also Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (the doctrine of *expressio unius est exclusion alterius* "as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.").[10]

Not only does §980(a)(2) say nothing about limiting the types of recordings entitled to protection, it also says nothing about limiting the scope of that protection to certain types of unauthorized uses. Once again, Pandora demands a revision in order to exclude public performance from protection. **(Br.:41-49)** However, the legislature's use of the term "exclusive ownership" puts an end to Pandora's argument since that ownership operates, as a matter of law, to exclude *all* unauthorized uses. Indeed, in California, exclusive ownership of property (whether tangible or intangible) excludes all others from using that property. *See* Civ. Code §654 (Nature of Property: Ownership Defined: "[t]he ***ownership*** of a thing is the right of one or more persons to possess and *use* it to the exclusion of others") (emphasis added); *see also People* v. *Kwok,* 63 Cal. App. 4th 1236, 1251-52 (1998) ("property is something that one has the exclusive right to possess ***and***

---

[10] The exception in §980(a)(2) for imitation recordings also does away with the nonsensical argument made in the proposed Yale amicus brief that §980(a)(2) violates the First Amendment because it does not recognize the "idea/expression dichotomy." **(Yale:7)**. By its plain language, §980(a)(2) only protects expressions, which is the only thing a particular recording could ever be.

*use*"*), citing* Civ. Code §654 (emphasis added); *Lane,* 50 Cal. App. 2d at 330

("[O]wnership is the right of a person to possess and use a thing to the exclusion of

others.").

      Exclusive ownership is not an obscure concept.  It is:

> [F]undamental to our theory of social organization.  In addition
>
> to its central role in protecting the individual's right to be let
>
> alone, the importance of exclusive ownership – the ability to
>
> exclude freeriders – is now understood as essential to economic
>
> development, and to the avoidance of the wasting of resources
>
> found under common property systems.  [Citations.]

*Hendler v. United States*, 952 F.2d 1364, 1375 (Fed. Cir. 1991).  In fact, the ability

to exclude others from unauthorized use of property is the *sine qua non* of

ownership.  *Dickman v. Comm'r*, 465 U.S. 330, 336 (1984) ("Without this right [of

exclusion] all other elements would be of little value…"); *see also Ruckelshaus v.*

*Monsanto Co.*, 467 U.S. 986, 1011 (1984) ("The right to exclude others is

generally 'one of the most essential sticks in the bundle of rights that are

commonly characterized as property.'") (citation omitted).

      Left with the reality that the plain language of §980(a)(2) does not limit

ownership of pre-1972 recordings to specific enumerated rights and does not

exempt any particular rights from the bundle of rights that comprise "exclusive

ownership," Pandora and its amici argue that the California legislature nevertheless

intended to exclude a public performance right from §980(a)(2) *sub silentio*.

Again, under *Geertz*, *Fnb Mortgage Corp.*, and *Silvers*, the court is not permitted

to assume exceptions; in fact, the court must presume *the opposite* – and may not

define exclusive ownership in a way that the legislature did not.[11]

The bottom line is that exclusive ownership of the artistic performances

embodied in pre-1972 recordings includes the entire bundle of rights and precludes

all unauthorized uses. The method of infringement chosen is simply of no

consequence. That is what Judge Gutierrez found and it is what Judge Strobel held

in *Capitol Records*, which operates here as persuasive authority. *See Employers*

*Ins. of Wausau v. Granite State Ins. Co*., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003);

*Altman v. HO Sports Co*., 821 F.Supp.2d 1178, 1189 n.14 (E.D. Cal. 2011).[12]

---

[11] Pandora argues that exclusive ownership must be limited by two federal copyright law doctrines: fair use and first sale. **(Br.:45-46)** Leaving aside that §301(c) prohibits this Court from using the federal Copyright Act to limit or annul California's protection of pre-1972 recordings, Pandora never explains how either of those doctrines affects ownership or even how they have any bearing on the issues in this case, since Pandora has not raised them as defenses.

[12] As a final throw-away, Pandora argues that §980(a)(2) should be defined not by its express language, but by the fact that after its enactment, no one asserted "an alleged entitlement" to a public performance right "in any court for the ensuing thirty years." **(Br.:39)** That is not how statutes are interpreted, and doing so would violate the Supreme Court's admonition against drawing inferences from a lack of judicial precedent. *See District of Columbia v. Heller*, 554 U.S. 570, 625-26 (2008) (noting long gaps of judicial silence before Bill of Rights applied to the states or laws were found to violate the First Amendment's guarantee of freedom

## 2. The Legislative History Of §980(a)(2) Posited By Pandora Is Irrelevant And Pure Fiction.

Because Pandora cannot get around the plain language of §980(a)(2), it engages in an elaborate analysis of the legislative history of earlier versions of §§980 and 983 in order to create a strange brew of legislative work product, from which it summarily concludes that the legislature must have meant something other than what §980(a)(2) actually says. However, not only does the plain meaning rule make Pandora's analysis of legislative history irrelevant, but that analysis is a work of fiction that relies on conjecture, half-truths, and a highly misleading culling of information in order to fit Pandora's narrative.

Pandora's selective presentation and manipulation of legislative history starts with its bold proclamation that the only purpose of §980(a)(2) was to "*maintain* rights and remedies in sound recordings fixed prior to February 15, 1972," which Pandora repeatedly claims precludes the statute from being construed as an affirmative grant of rights. **(Br.:2, 20, 38 citing ER30, 39, 44, 70)** (emphasis added by Pandora). Leaving aside the overly narrow definition that Pandora unilaterally ascribes to the word "maintain," Pandora never once informs the Court that the same legislative history actually states that §980(a)(2) would "***provide*** state copyright protection for works of authorship not protectable under federal law" and

of speech or the Establishment Clause).

26

"*grant* exclusive ownership to the authors" of the same. **(ER18, 57, 63, 84, 86)** (emphasis added). Providing and granting rights is not only inconsistent with Pandora's story, but exposes the folly of selectively using snippets of legislative history as authority; a folly that California's courts have consistently cautioned against allowing to distort the law:

> [I]t is the language of the statute itself that has successfully braved the legislative gauntlet. It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.' [Citations.]

*Siskiyou Cty. Farm Bureau v. Dep't of Fish & Wildlife*, 237 Cal. App. 4th 411, 439-40 (2015). Indeed, "[r]eading the tea leaves of legislative history is often no easy matter. Even assuming there is such a thing as meaningful collective intent, courts can get it wrong when what they have before them is a motley collection of

27

author's statements, committee reports, internal memoranda and lobbyist letters."
*Rea v. Blue Shield of Cal*., 226 Cal. App. 4th 1209, 1235 (2014) (quoting *J.A.
Jones Construction Co. v. Superior Court*, 27 Cal. App. 4th 1568, 1578 (1994)).[13]

Pandora not only misstates the actual legislative history of §§980 and 983,
but makes it up as well. Despite the fact that *none* of the legislative history relied
on by Pandora mentions the Second Circuit's decision in *RCA Mfg. Co. v.
Whiteman*, 114 F.2d 86 (2nd Cir. 1940), Pandora claims that when the California
legislature amended §983 in 1947 to "bring the California statute into accord with
federal law and judicial precedent within and without California," it was
specifically ***and silently*** importing the holding in that case. This takes the process
of analyzing legislative history to a whole new level: mind reading.

But what makes Pandora's argument even more fictional is its
characterization of the holding in *Whiteman*, which it describes as creating an
everlasting national rule that: (1) there was no public performance right in
recordings, and (2) sound recordings lost all state law protection upon publication.
**(Br.:15-19, 33)** Pandora's canonization of *Whiteman* fails because *Whiteman* was
expressly overruled in *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d

---

[13] It is a strange strategy for Pandora to try and create ambiguity in the legislative
history by defining "maintain" to exclude "provide" or "grant," as courts are
cautioned not to rely on an ambiguous legislative history. *See Jones Construction*,
27 Cal. App. 4th at 1578.

657 (2d Cir. 1955) and, even during its limited life, did not stand for the proposition that there was no performance right inherent in the ownership of pre-1972 recordings.

In *Whiteman*, the only issue addressed was whether, **under New York law**, following the sale of a recording, the owner of the artistic performance in that recording could enforce a restrictive legend on the packaging that stated it was "[n]ot Licensed For Radio Broadcast." *Whiteman*, 114 F.2d at 87. In addressing this limited issue, Judge Learned Hand assumed that the public sale of a record constituted a "general publication," ending all common law copyright protection. *Id*. at 88-89. Therefore, Judge Hand reasoned, if all "common law property" rights "ended with the sale of the records," its owner could not control its public performance through the use of a restrictive legend on the recording. *Id*.

*Whiteman* did not rule out the *existence* of a public performance right, but rather the ability to *enforce* it after a presumed divestive publication under New York law. And as to this issue, in 1950, the New York Supreme Court expressed a very different view of its own law, holding that the sale of a record to the public was **not** a divestive publication and did **not** end common law copyright protection. *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 798-99 (Sup. Ct. 1950). Because the holding in *Metro. Opera* was the exact opposite of what Judge Hand had assumed the law to be in *Whiteman*, when the Second Circuit

revisited the issue in *Mercury Records*, it conceded that its holding in *Whiteman* was wrong. *Mercury Records,* 221 F.2d at 663.[14]

Ironically, contrary to Pandora's argument that *Whiteman* made a broad pronouncement regarding the supposed non-existence of a performance right, the case actually establishes just the opposite. Indeed, *Whiteman* clearly recognized the existence of such a right; otherwise, it would never have had to reach the publication issue, which was the genesis of its entire decision.

Undeterred, Pandora makes the claim that even though *Whiteman* ultimately proved to be bad law, California had no reason to know this when amending §983 in 1947, and thus its holding outlives its own court's rejection of it. Even ignoring that *Whiteman* never stood for the primary proposition Pandora now claims it did, there is absolutely no indicia that California *ever* looked to *Whiteman*, much less adopted anything it had to say. In fact, at the time of the 1947 amendment, *Whiteman* stood in stark contrast to *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937), a case that pre-existed *Whiteman* and found – ***not by***

---

[14] SiriusXM's attempt to resuscitate *Whiteman* was referred to by the district court in New York as "clear error." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2014 U.S. Dist. LEXIS 174907, *4 (S.D.N.Y. Dec. 12, 2014). SiriusXM perpetuates that error in its proposed amicus brief, **(SXM:13-17)**, and still fails to cite a single case agreeing with its characterization of *Whiteman*. Instead, SiriusXM resorts to a Superior Court case from 1949 standing for an entirely *different* proposition that distribution of a pre-1972 recording published *the underlying composition* – a proposition that Congress expressly overturned by passing 17 U.S.C. §303(b). **(SXM:16-17)**

***predicting state law, but by confirming it*** – that there *was* a public performance

right in recordings at common law, which *survived* publication. Pandora provides

no reason why California, were it inexplicably seeking to take a side in this debate

by silent implication, would not have sided with *Waring* rather than *Whiteman,*

since the amendment's purpose was to "prevent substantial property rights from

being placed in jeopardy." **(ER123)**

　　In any event, if §980 was intended to adopt the ruling of *Whiteman,* "one

would expect the extensive legislative history would have mentioned it at least

once." *Riverside Cty. Sheriff's Dept. v. Stiglitz*, 60 Cal. 4th 624, 644 (2014). Try

as it might, Pandora has yet to provide a single respectable source for the

proposition that California quietly ceded authority to protect property rights to the

Second Circuit some 68 years ago. Instead, Pandora depends on attenuated

inferences and suggestions deceptively presented through various secondary

sources, all of which fall apart under scrutiny. No matter how desperately Pandora

wishes it were so, these sources are not the law, nor could they be. *See Delaney v.*

*Baker*, 20 Cal. 4th 23, 45-46 (1999).

### C.　Former Civil Code §983(a) Did Not Strip Pre-1972 Recordings Of Their Protection.

　　Central to Pandora's argument regarding the scope of rights under

§980(a)(2) is that §983(a) permanently stripped all pre-1972 recordings of

common law copyright protection once they were "published" (*i.e.,* according to

31

Pandora, commercially distributed). Pandora is wrong for at least the following reasons:

- §983(a) was repealed and, by law, must be treated as if it never existed;

- pre-1972 recordings were not "published" by their sale or broadcast; and.

- §983(a), by its own plain language, did not apply to sound recordings; it only applied to "composition[s] in letters or art."

### 1. Civil Code §983(a) Was Repealed.

During its existence, §983(a) had a single purpose: facilitating a seamless, uninterrupted hand-off from state protection of "compositions in letters and art" to federal protection of the same under the Copyright Act. *Richlin v. MGM Pictures, Inc.*, 531 F.3d 962, 972 (9th Cir. 2008). Consistent with the 1909 Copyright Act, the point at which that hand-off took place was when the "compositions in letters and art" were "published" (in the legal sense). As explained below, because recordings are neither "compositions in letters or art" nor capable of being "published" in the legal sense, §983(a) is ultimately irrelevant to this dispute. However, there is an even more immediate reason why §983(a) does not apply: it was repealed. Indeed, upon passage of the 1976 Copyright Act, which moved the point of federal protection from "publication" to "fixation," *Eldred v. Ashcroft*, 537 U.S. 186, 194-95 (2003), §983(a) ceased to have a purpose. Therefore, the California legislature repealed it in its entirety, which it had the absolute right to

do. *See Mendly v. County of Los Angeles*, 23 Cal. App. 4th 1193, 1207 (1994) ("A legislature may repeal a statute that created non-contractual expectations as long as there is a rational basis for repeal.") (quoting *Barcellos and Wolfsen v. Westlands Water Dist.*, 899 F.2d 814, 825 (9th Cir. 1990)).

The repeal of §983(a) contained no savings clause, and Pandora has cited to none. Thus, upon its repeal, §983(a) ceased to exist – and under California law must be treated as if it never existed. *Napa State Hospital*, 134 Cal. at 317-18. As the California Supreme Court made clear in *Napa State Hospital*:

> [T]he effect of repealing a statute is to obliterate it as completely from the records…as if it had never passed; and it must be considered as a law that never existed, except for the purpose of those actions which were commenced, prosecuted, and concluded whilst it was an existing law.

*Id.*; *accord Reagan v. Sausalito*, 210 Cal. App. 2d 618, 623 (1962); *Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.*, 176 Cal. App. 4th 1597, 1604 (2009); *see also Krause v. Rarity*, 210 Cal. 644, 653 (1930) ("a repeal of the statute conferring the right, prior to final judgment, would abolish the right and place the parties in the same position as if the statute never existed"); Civ. Code §3530 ("That which does not appear to exist is to be regarded as if it did not exist.").

The repeal of §983(a) not only obliterated that statute, but also eliminated any remedial immunity that it may have provided during its existence. *Callet v. Alioto*, 210 Cal. 65, 67-68 (1930) ("[A] cause of action or remedy dependent on a statute falls with a repeal of the statute..."); *see also Daghlian v. DeVry Univ., Inc.*, 574 F.3d 1212, 1213 (9th Cir. 2009) (repeal of a statute abated plaintiff's claims based thereupon); *Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1155-56 (N.D. Cal. 2005) ("[A]bsent a savings clause, repeals of statutory enactments must apply retroactively to pending cases."); *accord Southern Service Co., v. County of Los Angeles*, 15 Cal.2d 1, 11-12 (1940); *Governing Board v. Mann*, 18 Cal.3d 819, 829 (1977); *Younger v. Superior Court*, 21 Cal.3d 102, 109 (1978).

Since Pandora did not even exist when §983(a) was repealed, it certainly cannot complain about this outcome. In fact, Gov. Code §9606 provides that absent vested rights, ***no one*** can complain about the repeal of a statute:

> Any statute may be repealed at any time, except when vested rights would be impaired. Persons acting under any statute act in contemplation of this power of repeal.

Not only did Pandora have no vested rights as a result of §983(a), but neither did anyone else. As the United States Supreme Court emphatically held in *Golan v. Holder*, 132 S. Ct. 873, 891-92 (2012), even if a work falls into the public

domain, the public does not gain any "vested rights" to that work. This is because the public domain is not "inviolate." *Golan*, 132 S. Ct. at 886.

*Golan* lays waste to Pandora's "zombie" copyrights hyperbole as well as its complaint that §980(a)(2) "accomplish[ed] the largest rescission of works from the public domain in U.S. history…" **(Br.:40)** The same public that had no vested rights in *Golan* also has no vested rights in this case. Furthermore, §983(a) did not even purport to grant the public vested rights; by its plain language, it merely operated as limitation on liability for use of the covered works "so far as the law of this State is concerned." Thus, it was perfectly appropriate for the California legislature to repeal §983(a) and to provide statutory protection for recordings through enactment of §980(a)(2). *See McBarron v. Kimball*, 210 Cal. App. 2d 218, 220-21 (1962).

Not only did §983(a) cease to exist when it was repealed, its obliteration negated any case law dependent on it, including that portion of *Lone Ranger* where the court used §983(a) to limit the common law copyright claim. *See Allen Archery,* 686 F.2d at 783 (declining to apply cases that were based upon repealed statutes); *In re Gonzalez*, 456 B.R. 429, 435, fn. 8 (Bankr. C.D. Cal. 2011) (disapproving of a proposition derived from cases based on a repealed statute); *Chiatello v. City and County of San Francisco*, 189 Cal. App. 4th 472, 488 (2010) (declining to apply a case where it "relied on an immunity statute that has

subsequently been repealed."); *Guardianship of Casad*, 106 Cal. App. 2d at 141-42 (decision founded on repealed statute "has no authoritative force."); *Bell v. United States*, 366 U.S. 393, 400 (1961) (declining to decide applicability of a statute "for the reason that the statute was repealed more than a year before the [defendant] relied upon it…").

*Lone Ranger* may be cited for many things, but it *cannot* be cited for the proposition that §983(a) was a divesture of ownership. The only reason that §983(a) was discussed in *Lone Ranger* was because it was still "in effect at the time of the filing of [the] suit." *Lone Ranger*, 740 F.2d at 726. However, that was error, as it is not enough for a statute to be in force when an action is filed, it must be in force when an action is **concluded**, *Napa State Hospital*, 134 Cal. at 318, and in *Lone Ranger*'s case, §983(a) was not. Notably, sixteen years after *Lone Ranger*, the Ninth Circuit relied on §980(a)(2) to protect pre-1972 recordings (recorded lectures made before 1952) that had been published (according to Pandora's view of publication) while §983(a) was in effect. *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1325-26, 1329-30 (9th Cir. 2000). This time, however, the court correctly did not layer §983(a) into its analysis.

36

### 2. <u>The Sale of Records Has Never Constituted A General Publication Of The Sounds</u>.

Aside from being repealed, §983(a) does not help Pandora for yet another very important reason: because of their special nature, pre-1972 recordings were not "published" under the law when commercially distributed. Indeed, those jurisdictions that have addressed this issue have routinely held that publication (as a legal concept) is simply not applicable to recordings. The rationale for this conclusion is quite simple: if, as Pandora contends, the sale of even one copy of a pre-1972 recording "published" it, thereby causing the owner of that recording to be divested of all its rights (since no federal scheme of protection then existed), ***no one would have ever sold recordings***. As correctly noted in *Erickson*:

> It is reasonable to conclude that permitting such appropriation would discourage invention and free competition – and that those engaged in the recording industry would be inclined not to utilize their skill and efforts, and expend large amounts of money, in producing unique recordings, but would wait for a recording to be produced, and then duplicate it and sell it, at maximum profit and with minimum effort and expense.

2 Cal. App. 3d at 538.

This obvious conclusion has led courts to consistently carve out pre-1972 recordings from the traditional consequences of publication, including in *Capitol*

*Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198, 1206 (C.D. Cal. 2010) when the defendant made exactly the same argument that Pandora is making here. Relying on *Erickson*, *Heilman*, *Goldstein,* and even *Lone Ranger*, the court in *Bluebeat* easily concluded that publication of pre-1972 recordings did not strip those works of "protectable and actionable ownership rights." *Id.*

California is not an outlier on this issue; other jurisdictions routinely reject that pre-1972 recordings are published upon sale or broadcast, including New York (*Metro. Opera*, *supra*; *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 560 (2005)), Florida (*CBS, Inc. v. Garrod*, 622 F. Supp. 532, 534 (M.D. Fla. 1985)), Michigan (*A&M Records, Inc. v. M.V.C. Distrib. Corp.*, 574 F.2d 312, 314 (6th Cir. 1978)), Wisconsin (*Mercury Record Prods. v. Econ. Consultants, Inc.*, 64 Wis. 2d 163, 184 (1974)), and Pennsylvania (*Waring*, *supra*).

In the face of these holdings, it is rather startling that Pandora would cite *Whiteman* for the general proposition that recordings were published upon their sale – and never mention that *Whiteman* was overruled on this exact point. **(Br.:33)** Pandora tries to mask the history of *Whiteman* on this issue by citing a 1956 law review article by Melville Nimmer (*not* his treatise) discussing his personal views on "publication." **(Br.:33)** As Nimmer's treatise acknowledges, courts did not agree with the views expressed in the law review article. 1-4

MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT §4.02 n.47 (Matthew Bender, Rev. Ed. 2015). The treatise correctly points out that:

> The usual state law doctrine that publication terminates common law copyright has not meant that state law protection of sound recordings is lost upon publication. Such protection survives publication either by reason of particular statutory provisions or by application of "property right" or unfair competition theories.

*Id*. at §4.06[B].

### 3. <u>Civil Code §983(a) Applied To Compositions, Not Recordings</u>.

Even if §983(a) had never been repealed, it would still be of no use to Pandora because it applied only to "composition[s] in letters or art," meaning the underlying musical compositions embodied in sound recordings, rather than the recordings themselves. This is, of course, consistent with the ordinary definition of a composition, which Merriam-Webster describes as "a piece of writing." On the other hand, recordings are not "an artist's music in written form" – they are works that result from the fixation of a series of musical, spoken, or other sounds. *Newton*, 204 F. Supp. 2d at 1248-49. From the time that the Supreme Court held in 1908 that piano rolls "did not constitute a 'copy' of the copyrighted musical composition because they were not written or printed in tangible form," the

recording has been considered to be "a performance...of a musical composition," but not the composition itself. *See ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688 (9th Cir. 2000) (citing *Goldstein* and *White-Smith Music Publishing Co. v. Apollo Co.*, 209 U.S. 1, 17 (1908)); *see also Naxos*, 4 N.Y.3d at 552-58.

It is the plain meaning of "composition" that both governs the interpretation of §983(a) and exposes its inapplicability to these proceedings. *Smith v. Fair Emp't & Hous. Com*, 12 Cal. 4th 1143, 1225 (1996) (holding that when interpreting a statute, words are to be given their usual and ordinary meaning). The plain meaning is also fully consistent with the purpose of §983(a), which was to draw a bright line between when state copyright protection ended and federal copyright protection began. This line was critical for "compositions" in order to facilitate a seamless, uninterrupted hand-off from state protection to federal protection. When publication occurred, state protection had to end because state and federal protection were not permitted to "coexist." *Bobbs-Merrill Co.* v. Straus, 210 U.S. 399, 346-47 (1908). During the life of the 1909 Act, §983(a) was the California legislature's way of respecting the dividing line between state and federal law, ensuring that state protection halted with respect to those "works which have been published within the meaning of the [federal copyright] statute." *Id*.

Conversely, because pre-1972 recordings were not entitled to federal copyright protection, there was no hand-off to be made, and thus no need to draw a dividing line. The issue of co-existing state and federal protection was simply not relevant to recordings. What was copyrightable under federal law (and, thus, what was pertinent for purposes of line drawing) were various types of written material, starting with maps, charts, and books in 1790 and extending to historical prints in 1802, musical compositions in 1831, photographs in 1865, and finally paintings, drawings, chromos, statuettes, statuary, and models or designs of fine art in 1870. *Goldstein*, 412 U.S. at 562 n.17. It was against this historical backdrop that protection for "compositions in letters or art" first appeared in California's Civil Code.

Indeed, in 1872, the California legislature enacted former §980, which granted an exclusive ownership to "[t]he author of any product of the mind, whether it is an invention, or a composition in letters or art, or a design." At the same time, the legislature also enacted former §983, a complementary statute which provided that "[i]f the owner of a product of the mind intentionally makes it public, a copy or reproduction may be made public by any person, without responsibility to the owner, so far as the law of this State is concerned." The limitation of liability created by §983 was not a divestment of rights as Pandora repeatedly contends, but rather an acknowledgment of the dividing line between

41

common (state) law and statutory (federal) copyright, drawn to ensure that state protection would not overlap with federal protection of published works. As the Code Commissioner's Note stated, "[t]he protection afforded by Act of Congress is a matter of Federal legislation, with which the State cannot interfere." *See* Code Commissioner's Note of 1874 (**Dkt.22-10, p. 4.**)[15]

In fact, when Congress first granted protection to musical compositions in 1831 and California to "compositions in letters or art" in 1872, there were no such things as recordings – the technology for mechanically reproducing music had not even been invented. *ABKCO*, 217 F.3d at 688. Thus, in 1872, to the extent "composition in letters or art" encompassed music, it could have only been *as* a composition (*i.e.* sheet music) and not a recording.

The definition of "composition" has not changed over time, nor was there any need for it to change, since Congress did not provide recordings with federal protection until well after the final iterations of §§980 and 983(a) were already on the books in California. Even when Congress enacted the 1909 Copyright Act – long after the invention of the phonograph – it still considered recordings to be "*renderings of [an] original artistic performance"* subject only to "state control," and thus not copyrightable matter. *Goldstein,* 412 U.S. at 566 (emphasis in original); *see also Naxos,* 4 N.Y.3d at 552-53 (confirming that because "sound

---

[15] "Dkt." refers to the docket-entry number assigned by the district court.

recordings could not be 'published' under federal law, they were [only] eligible for state common law protection."). Thus, there was no need for California to have a line of demarcation between state and federal law for recordings.

By 1947, Congress still had not changed its view that recordings were not entitled to federal protection. Thus, when the California legislature limited §§980 and 983(a) that year to include only "compositions in letters or art," it would have been nonsensical to suddenly encompass recordings in their subject matter. The purpose of the statutes – to demarcate where federal protection of a copyrightable work subsumed state protection of that same work – had not changed, nor had the ineligibility of recordings for such federal protection.

**D. Separate and Apart from §980(a)(2), Pre-1972 Recordings Are Also Protected Under California Common Law.**

**1. Common Law Tort Claims Were Never Affected By §983(a).**

In an attempt to burden all California law with its view of §983(a), Pandora boldly asserts that "[w]ithout a viable claim under California copyright law, Flo & Eddie's claims under the common law doctrines of misappropriation, unfair competition, and conversion must also fail." **(Br.:50)** However, two paragraphs later, Pandora's abandons its assertion when it reluctantly admits that "[n]on-copyright common law doctrines do afford *some* legal limits on the use of published sound recordings, just as they restrict the use of any number of goods,

43

and just as countless other bodies of law continue to apply to sound recordings that do not enjoy copyright protection." **(Br.:50)** (emphasis in original)

Pandora's admission is hardly surprising given that California has never treated the common law doctrines of misappropriation, unfair competition, and conversion as derivative of common law copyright, nor dependent on the existence of such of claim in order to subsist. And the proof of that is *Goldstein*, *Erickson*, *Heilman*, and *Bluebeat* – all cases involving pre-1972 recordings that had been (by Pandora's argument) published under §983(a), yet liability (and, in *Goldstein*, a criminal conviction) was still found. Even *Lone Ranger* – the centerpiece of Pandora's anti-SLAPP motion – held that §983(a) had no effect on common law tort claims. *Id.* at 726. In fact, *Lone Ranger* was the first case in California to address liability for unlicensed exploitation of pre-1972 recordings through public performance. There, the defendants had claimed to have lawfully purchased "copies of the tapes from some collectors and re-mixed the recordings onto broadcast cartridges for radio play" and "began unlicensed leasing of Lone Ranger episodes to radio stations" for public broadcast. *Id.* at 720. The only difference between the defendants in *Lone Ranger* and Pandora is that Pandora has cut out the middleman. Either way, such conduct is "conversion of an intangible property right in the performances embodied in" the recordings. *Id.* at 726.

**2.    The Common Law Protects All Rights Inherent In The Ownership Of Pre-1972 Recordings.**

Although §983(a) never had any effect on common law tort claims, Pandora nevertheless attempts to limit those claims by once more arguing that exclusive ownership of pre-1972 recordings is actually something less than exclusive. According to Pandora, "California's common law doctrines of misappropriation, unfair competition, and conversion have never ***granted*** anything like an exclusive right to publicly perform sound recordings." **(Br.:48)** (emphasis added)  That is not how the common law works.  Pandora and its amici continually ignore that, under the common law, exclusive ownership of property does not require a separate grants of rights, as it already includes ***all*** rights and operates to exclude all others from using that property without authorization.  *See* Civ. Code §654; *Kwok,* 63 Cal. App. 4th at 1251-52; *Lane,* 50 Cal. App. 2d at 330; *Dickman*, 465 U.S. at 336; *Ruckelshaus*, 467 U.S. at 1011.[16]  There is no need to look for a separate affirmative grant of a performance right, as the right and ability to exclude others from using a pre-1972 recording applies to all unauthorized uses as a natural incident of property ownership.  Curiously, Pandora accepts this in the context of reproduction and distribution – which come from the same bundle of sticks as all

---

[16] Because common law ownership of pre-1972 recordings uses as its starting point that all rights are inherent in ownership, it is necessarily much broader than the list of enumerated rights in the federal Copyright Act, 17 U.S.C. §106, which are intended to act only as a limited grant of rights.

other rights in pre-1972 recordings – but then dismisses it in the context of public performance based on nothing more than its own say-so.  There is an intellectual dishonesty in Pandora's approach that is irreconcilable with the actual law.

Perhaps recognizing this shortcoming in its attempt to change the rights attendant to the ownership of pre-1972 recordings from "exclusive" to "partial," Pandora argues for a narrow construction of California law bounded by the precise conduct at issue in *Erickson* and *Heilman*.  However, merely because the specific allegations in those cases drove the findings of liability, it does not follow that those courts were defining the full scope of California law regarding pre-1972 recordings in connection with cases (and issues) that were not before them.  *See Hill*, 79 Cal. App. 2d at 370 ("We have not been cited to any case and we know of none that authorizes an appellate court to inform the litigants what the opinion of the court is upon a question that has not been raised in the action, or what its decision would be if the question should be presented."); *Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1041 (9th Cir. 2010) ("A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.") (citations and internal quotation marks omitted).  Nor would it even have made sense for *Erickson* and *Heilman* to permanently freeze the law based upon the conduct at issue in those cases, since "[t]here is no complete list of the activities which constitute unfair

competition." *Ojala* v. *Bohlin,* 178 Cal. App. 2d 292, 301 (1960). To accept Pandora's view of the law would transform every case of *first* impression into one of *final* impression. That is not how the common law works.

The enduring proposition that *Erickson* and *Heilman* actually stand for – and what Pandora cannot escape – is that the artistic performances in pre-1972 recordings are property, the unauthorized taking of which creates liability for misappropriation and conversion. *Erickson*, 2 Cal. App. 3d at 537-38; *Heilman,* 75 Cal. App. 3d at 564. That is what resulted in the California courts' findings of liability for misappropriation, which does not require a specific form of appropriation, only that the plaintiff have invested substantial time and money in the development of property that the defendant appropriated at little or no cost, thereby, injuring the plaintiff. *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342 (1990). Similarly, a finding of conversion (which is a strict liability tort) only requires a plaintiff to show ownership or right to possession of the property and conversion by a wrongful act or disposition of property rights. *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014).

Under both misappropriation and conversion, the precise means by which Pandora appropriates and uses pre-1972 recordings is not the test for liability, which is why neither *Erickson* nor *Hellman* said that the exclusive ownership rights in pre-1972 recordings should be defined differently depending on the

Case: 15-55287, 11/30/2015, ID: 9773601, DktEntry: 67, Page 62 of 75

method of infringement employed by the defendant. What they said is that liability should attach to the conduct of those who attempt to profit off the property of others – the same thing that the Supreme Court said in *International News Service v. Associated Press*, 248 U.S. 215, 239-40 (1918):

> [D]efendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, and that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown….

Although *International News* was based on federal common law that ceased to exist as a result of *Erie v. Tomkins,* 304 U.S. 64 (1938), California courts (including *Erickson*) nevertheless recognized the soundness of that decision and hardwired its basic misappropriation principles into California law. *Balboa Ins. Co.*, 218 Cal. App. 3d at 1342; *Hollywood Screentest Of America, Inc.* v. *NBC Universal, Inc.,* 151 Cal. App. 4th 631, 650 (2007).

While Pandora defensively suggests that its misappropriation looks nothing like the activity of pirates as they operated in the analog era of music, it does not matter that Pandora is misappropriating and converting the artistic performances embodied in pre-1972 recording to copy and distribute them as audio transmissions

rather than cassettes or compact discs – it is still "reaping what it has not sown." In any event, Pandora's contention that what it does is not piracy is simply wordplay. **(Br.:52)** The definition of piracy is not limited to a particular unauthorized use, but rather "is a lay term susceptible to many definitions." *Nat'l Union Fire Ins. Co. v. Siliconix, Inc*., 729 F. Supp. 77, 80 (N.D. Cal. 1989). This includes "the unauthorized appropriation or use of a copyrighted or patented work, idea, etc." *Big Sur Waterbeds v. Maryland Cas. Co.,* 1992 U.S. Dist. LEXIS 22596, *13-14 (C.D. Cal. Dec. 22, 1992) (quoting *Random House College Dictionary* 1011 (rev. ed. 1980)). *See also* Webster's Ninth New Collegiate Dictionary (1991) (defining piracy as "the unauthorized use of another's production, invention or conception esp. in the infringement of a copyright.").[17]

## II.  PANDORA'S CONDUCT DOES NOT QUALIFY FOR ANTI-SLAPP PROTECTION.

California's anti-SLAPP statute – Code Civ. Proc. §425.16 – was intended as a procedure to allow a court to strike a narrow class of lawsuits; namely, those based on a defendant's "lawful pursuit" of a right to free speech in connection with a public issue. *Gotham Ins. Co. v. Shasta Techs*., *LLC*, 2014 U.S. Dist. LEXIS

---

[17] Pandora makes the vague suggestion that California common law should be guided by the exemption for criminal liability in Cal. Pen. Code §653h provided to broadcasters for reproduction. **(Br.:52)** To the contrary, that exemption shows that the California legislature knew how to protect broadcasters for certain types of conduct if it wanted to. That the legislature chose not to provide broadcasters with protection from *civil* liability for the same activity is telling.

47007 *9 (N.D. Cal. Apr. 3, 2014). In other words, "lawsuits that 'masquerade as ordinary lawsuits'" but are really "brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Mello v. Great Seneca Fin. Corp.*, 526 F. Supp. 2d 1024, 1027 (C.D. Cal. 2007) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1023-24 (9th Cir. 2003)).

It is against this backdrop that Pandora contends that it has a First Amendment right to take property owned by others for free in order to build a multi-billion dollar business for itself. The better view of the First Amendment, however, was expressed to the Supreme Court in *Golan* when SiriusXM's former counsel and Pandora's current counsel in other matters stated: "[t]he First Amendment is intended to protect the right to free speech, but it is not intended to make the copying of someone else's speech free."[18]

This is hardly a controversial proposition given that the First Amendment has never been construed as a license to steal or a safe haven for piracy. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 555-57 (1985) (rejecting First Amendment challenge to copyright infringement action); *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 451-52 (C.D. Cal. 2007) ("To the extent

---

[18] Brief of Amicus Curiae American Intellectual Property Law Association In Support of Respondents at 7, *Golan v. Holder*, No. 10-545 (U.S. 2012), *available at* http://www.americanbar.org/content/dam/aba/publishing/previewbriefs/Other_Brief_Updates/10-545_respondentamcuaipla.authcheckdam.pdf.

[Defendants] are engaged in copyright infringement, the First Amendment affords them no protection whatsoever."); *A&M Records v. Napster, Inc*., 239 F.3d 1004, 1028 (9th Cir. 2001) (holding that the First Amendment does not protect use of a peer-to-peer file sharing network that constitutes copyright infringement); *Cable/Home Communication Corp. v. Network Productions, Inc*., 902 F.2d 829, 849 (11th Cir. 1990) ("the First Amendment is not a license to trammel on legally recognized rights in intellectual property.") (citation omitted).

Pandora is not, as it contends, a purveyor of free speech. It is a serial infringer that is using the First Amendment as the vehicle for a right of immediate appeal under California's anti-SLAPP statute. But Pandora must first satisfy its burden of showing that F&E's claims arise from protected activity; in this case, "conduct in furtherance of the exercise of...the constitutional right of free speech in connection with a public issue or an issue of public interest." §425.16(e)(4).

### A. F&E's Claims Do Not "Arise From" Protected Activity.

Pandora claims that because the streaming of F&E's sound recordings could be considered First Amendment activity as a general matter, it therefore must also constitute "protected activity" under §425.16 when done by Pandora. **(Br.:29)** But Pandora never really explains what protected activity it is engaging in that implicates *its* speech or creativity. This shortcoming is highlighted by the cases that Pandora relies on. In each case, the defendants' actions involved, to some

minimum degree, elements of their *own* speech or creativity. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 899 (9th Cir. 2010) (plaintiff's likeness used in artistic caricature); *Doe v. Gangland Prods.*, 730 F.3d 946, 950 (9th Cir. 2013) (plaintiff's interview used in episode of informative documentary series); *Tamkin v. CBS Broad., Inc*., 193 Cal. App. 4th 133, 137-40 (2011) (plaintiffs' likenesses used in episode of dramatic television series); *Hall v. Time Warner, Inc*., 153 Cal. App. 4th 1337, 1341-43 (2007) (plaintiff's interview used in informative news segment); *No Doubt v. Activision Publ'g, Inc*., 192 Cal. App. 4th 1018, 1022-25 (2011) (plaintiffs' likenesses used in artistic videogame simulation).[19]

In this case, however, Pandora's conduct involves *no* speech of its own; it simply takes the recordings owned by F&E and other members of the putative class, then turns around and sells broadcasts of them to the public. It does not add to the recordings in any way or integrate them into a greater whole, as the defendants in the cases it relies on did. As such, F&E's complaint does not stifle any expression by Pandora, because none was ever implicated.

---

[19] While Pandora also relies on *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) and *Preferred Commc'ns, Inc. v. City of Los Angeles*, 754 F.2d 1396 (9th Cir. 1985), neither case involved any analysis of California's anti-SLAPP statute or the threshold requirements of expressive conduct necessary to satisfy its first prong.

**B.**    <u>Pandora's Misappropriation Of Pre-1972 Recordings Does Not Constitute Speech On A Matter Of Public Interest.</u>

For the first prong to be satisfied, Pandora must also show that its speech is in connection with *an issue of public interest*. The California legislature intended this requirement to "to have a limiting effect on the types of conduct that come within...the statute." *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003). Although §425.16 "does not provide a definition for 'an issue of public interest,'" it should implicate "some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient" and requires more than "mere curiosity." *Id*. (citations omitted).

Pandora makes little attempt to connect the dots between what it contends is its protected speech and the public interest in that speech. About the only thing that Pandora claims is that because pre-1972 sound recordings are culturally valuable as a general matter, its streaming of them constitutes a matter of public interest. **(Br.:30-32)** However, "[t]he fact that 'a broad and amorphous public interest' can be connected to a specific dispute is not sufficient to meet the statutory requirements" of the anti-SLAPP statute. *Dyer v. Childress*, 147 Cal. App. 4th 1273, 1280 (2007). "By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called 'synecdoche

theory of public issue in the anti-SLAPP statute,' where '[t]he part [is considered] synonymous with the greater whole.'" *World Fin. Grp., Inc. v. HBW Ins. & Fin. Services, Inc*., 172 Cal. App. 4th 1561, 1570 (2009) (quoting *Commonwealth Energy Corp. v. Investor Data Exchange, Inc*., 110 Cal. App. 4th 26, 34 (2003)). Here, the fact that pre-1972 recordings are generally of public interest does not mean that Pandora's speech (which it has to yet to identify) "contributes in some manner to a public discussion of the topic." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677 (2010) (quoting *Hall*, 153 Cal. App. 4th at 1347).

The facts in *Stewart* are illustrative of the shortcoming in Pandora's showing. Indeed, in *Stewart*, the defendants prepared a "five-page Feature...concern[ing] an extremely popular genre of music," which the court found to be "a creatively crafted, whimsical editorial commentary on the many bands whose musical works have contributed to the development of the genre." *Id.* at 678. Comparatively, Pandora does not add to any discussion of the pre-1972 recordings it exploits; it simply exists to commercially profit from their unauthorized sale. In evaluating the first prong of the anti-SLAPP statute, the court must focus on "the *specific nature of the speech*" offered by the defendants, "rather than the generalities that might be abstracted from it." *Commonwealth Energy Corp*., 110 Cal. App. 4th at 34 (emphasis in original). Pandora's attempt to

dress up its misappropriation with cultural clout cannot hide the fact that it offers

no speech of its own and contributes to no dialogue as to the works it has stolen.

## III.  CERTIFICATION TO THE CALIFORNIA SUPREME COURT IS UNNECESSARY.

Pandora claims that if this Court does not reverse the District Court, it

should certify three question to the California Supreme Court because "[n]o

California court has ever recognized the extraordinary state law rights that F&E

seek to assert," **(Br.:55)**  Of course, that is false, as Judge Strobel "concluded that

Section 980 must be interpreted to recognize exclusive ownership rights as

encompassing public performance rights in pre-1972 sound recordings," *Capitol*

*Records I,* 2014 WL 7387972 at *5, and then supplemented her opinion to reject

the contention that *Whiteman* had any role to play in interpreting §980.  *Capitol*

*Records II,* 2014 WL 7150014 at *2.

Pandora *entirely omitted* these state court rulings from its opening brief

because it undoubtedly recognized the well-established rule that "[s]tate courts are

the ultimate expositors of state law...."  *Webb v. Smart Document Solutions, LLC*,

499 F.3d 1078, 1088 (9th Cir. 2007).  This is especially true where the highest

court in the state has denied review of a lower court's decision, *Hicks v. Feiock*,

485 U.S. 624, 629-30, 630 n.3 (1988), and that is exactly what occurred in *Capitol*

*Records*.  Indeed, after the California Court of Appeals denied SiriusXM's Petition

for Writ of Mandamus of the ruling in *Capitol Records* – a ruling that *solely*

*concerned* the existence of a public performance right for pre-1972 recordings under California law – SiriusXM filed a Petition for Review with the California Supreme Court. That petition was also denied. *See SiriusXM v. L.A. Superior Court,* 2015 Cal. LEXIS 2373 (Cal. Apr. 29, 2015).

The significance of the California Supreme Court's denial of SiriusXM's petition is not to be underestimated, as it is presumed that the majority of writ denials "are on the merits after a full examination of the [pleadings]" whether or not oral argument is held or a written opinion is issued. *Joyce G. v. Superior Court*, 38 Cal. App. 4th 1501, 1513 (1995). This is true even if the denial is silent as to as the reasons. *See id.* at 1513-14*; cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The maxim is that silence implies consent, not the opposite – and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below. The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect – which simply 'looks through' them to the last reasoned decision – most nearly reflects the role they are ordinarily intended to play.").

Here, Pandora is asking this Court to certify to the California Supreme Court *the exact same question* that SiriusXM asked it to review in *Capitol Records*; namely, whether there is a performance right in pre-1972 recordings under state law. Because federal courts, when faced with questions of state law, must predict

how the highest state court would rule, *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001), the best place to start would be with what the California Supreme Court did when it was actually faced with the issue. It declined to upset the ruling that an exclusive public performance right in pre-1972 recordings is entirely consistent with California law.

Thus, contrary to Pandora's claim that no California court has ever recognized a performance right in pre-1972 recordings, in actuality, every single time a California court has been presented with the issue, it has ruled in *favor* of such a right existing. While Pandora would like to ignore the procedural history in *Capitol Records*, it cannot. Accordingly, certification is unwarranted. *See Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) ("[W]e invoke the certification process only after careful consideration and do not do so lightly"); *Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011) (denying certification request where "sufficient controlling precedent exists from the California appellate courts to address the questions posed, and there is no indication that the California Supreme Court would decide these issues differently.").

## VI.     **CONCLUSION**.

Based on the foregoing, the District Court's denial of Pandora's motion to strike should be affirmed and F&E should be awarded its costs.

Dated:  November 30, 2015

Respectfully submitted,

By:    /s/ Harvey W. Geller

GRADSTEIN & MARZANO, P.C.
Henry Gradstein
Maryann R. Marzano
Harvey Geller
Daniel Lifschitz
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone:  (323) 776-3100

Attorneys for Plaintiff-Appellee
FLO & EDDIE, INC.

58

## <u>STATEMENT OF RELATED CASES</u>

Appellee is unaware of any related cases pending in this Court that are

related to this appeal, as defined and required by Circuit Rule 28-2.6.

Dated:  November 30, 2015                   By: _/s/ Harvey Geller_____
                                                     Harvey Geller

## <u>CERTIFICATE OF COMPLIANCE</u>

The brief complies with the Fed. R. App. P. 32(a)(7)(B) because it contains 13,631 words (based on Microsoft Word word-count function), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii). The brief also complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated: November 30, 2015

Respectfully submitted,

By: __/s/ Harvey W. Geller_____

GRADSTEIN & MARZANO, P.C.
Henry Gradstein
Maryann R. Marzano
Harvey Geller
Daniel Lifschitz
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone: (323) 776-3100

Attorneys for Plaintiff-Appellee
FLO & EDDIE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 30, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 30, 2015            By: */s/* Harvey Geller_____
                                        Harvey Geller